IN THE CASE OF

UNITED STATES, Appellee

v.

Holly M. BALDWIN, Captain
U.S. Army, Appellant

No. 00-0104

Crim. App. No. 9800230

United States Court of Appeals for the Armed Forces

Argued October 10, 2000

Decided January 16, 2001

SULLIVAN, J., delivered the opinion of the Court, in which
CRAWFORD, C.J., and GIERKE, EFFRON, and BAKER, JJ., joined.

Counsel

For Appellant: Alison Ruttenberg (argued); Captain Sean Park (on brief).


For Appellee:  Captain Paul T. Cygnarowicz (argued); Colonel David L. Hayden,
    Lieutenant Colonel Edith M. Robb, and Major Anthony P. Nicastro (on
    brief).


Military Judge:  Keith H. Hodges

THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE PUBLICATION.

Judge SULLIVAN delivered the opinion of the Court.

During the fall of 1997 and in February of 1998, appellant was tried by a general court-martial composed of officer members at Fort Bliss, Texas. Contrary to her pleas, she was found guilty of two specifications of larceny, conduct unbecoming an officer, and two specifications of service-discrediting conduct (mail tampering and obstruction of justice), in violation of Articles 121, 133, and 134, Uniform Code of Military Justice, 10 USC §§ 921, 933, and 934, respectively. The military judge then dismissed the two larceny specifications as multiplicious with the remaining offenses, and the members sentenced appellant to a dismissal, 1 year's confinement, and total forfeitures on February 6, 1998. The convening authority on May 19, 1998, approved this sentence, and the Court of Criminal Appeals affirmed on October 1, 1999.

On May 19, 2000, this Court granted review on the following two issues of law:

> I. WHETHER THE CONVENING AUTHORITY
> EXERCISED UNLAWFUL COMMAND INFLUENCE OVER
> THE PROCEEDINGS BY REQUIRING THE COURT
> MEMBERS, IN THE MIDDLE OF THE TRIAL, TO
> ATTEND AN OFFICER PROFESSIONAL DEVELOPMENT
> PROGRAM WHERE "APPROPRIATE" PUNISHMENTS
> FOR OFFICER COURT-MARTIAL DEFENDANTS WAS
> DISCUSSED.
>
> II. WHETHER APPELLANT IS ENTITLED TO
> RELIEF ON SENTENCE AS REDRESS FOR THE
> GOVERNMENT'S VIOLATIONS OF ARTICLE 55
> WHILE APPELLANT WAS IN POST-TRIAL
> CONFINEMENT.

We hold that appellant is not entitled to relief based on her complaints about the alleged conditions of her post-trial confinement.  See United States v. Avila, 53 MJ 99 (2000).  Nevertheless, we set aside the decision of the appellate court below and remand this case for a DuBay [1] hearing on the issue of unlawful command influence.  See United States v. Dykes, 38 MJ 270 (CMA 1993).

Nine months after her court-martial, appellant signed a statement and later filed it with the Court of Criminal Appeals.  See United States v. Grostefon, 12 MJ 431 (CMA 1982).  It said:

AFFADAVIT [sic]
November 20, 1998

I, Holly M. Baldwin, would like to make the following statement.  Shortly after I was transferred from Fort Lewis to Fort Bliss (fall 1997), Ft. Bliss was having a Family Values Week.  One of the Officer Professional Development programs mandated by Commanding General Costello was one directed at Ethics.  At that particular OPD, one of the topics discussed was an incident that happened with three of the Officers in the 31st ADA BDE that were being court-martialed.  The address included comments that the court-martial sentences were too lenient and that the minimum sentence should be at least one year and that Officers should be punished harsher than enlisted soldiers because Officers should always set the example and be above reproach.  The day after this OPD one of the officers from the 31st was set to be sentenced.  I believe his name was Major Brennan.  I attended this OPD, but didn't learn of the sentencing until a

---

[1]  United States v. DuBay, 17 USCMA 147, 37 CMR 411 (1967).

> discussion I had with his attorney, Mr. Jim Maus. He is an attorney in my civilian attorney's (Jim Darnell) law office in El Paso, TX. Mr. Maus was Major Brennan's civilian counsel. Mr. Maus also informed me that this type of OPD was inappropriate and that it could be considered jury tampering and he was filing an appeal on Major Brennan's behalf stating such.
>
> On the day of my conviction and sentencing, the final part of the trial was delayed for another OPD that was mandatory for all Officers on post. This OPD dealt with the situation Lt. Kelly Flynn was embroiled [sic]. The theme about this OPD was that she was not punished as she should have been and that she had basically gotten over. It was then stated she should not have been allowed to resign, but should have been court-martialed. I would also like to note here that I submitted a Resignation for Good of Service [sic] on or about 1 May 97 and it was held and never sent up as the regulation states. That afternoon after the officers on my panel went to the OPD, I was convicted and sentenced to 1 year at Ft. Leavenworth. It should also be noted that 4 of the officers on my panel were in the same rating chain. They included the Brigade Commander, Brigade Deputy Commander, the HHC Company Commander and another BDE Primary Officer.
>
> I swear the above mentioned statement is true to the best of knowledge.
>
> Signed <u>Holly Morris Baldwin</u>
> Date   <u>November 20, 1998</u>

(Emphasis added).


Appellant argued that "her sentence to one year in confinement and the rejection of her request for Resignation for the Good of the Service was the result of these actions, which clearly constitute unlawful command influence in this case." The

Government did not oppose this motion to file, but in its final brief it simply asserted that "it [appellant's claim] lacks merit." The Court of Criminal Appeals summarily affirmed this case.

___  ___  ___

I

The Government argues that appellant's post-trial claim of unlawful command influence should be denied because she "has failed to meet her threshold burden of production in this case." Final Brief at 7. It further contends that "[a]ppellant's own ambiguous, self-serving, and unsubstantiated declaration does not establish a viable claim of unlawful command influence." Moreover, it notes that "appellant never raised this issue at trial" nor made any "effort to bring this allegation to the military judge's attention and conduct some minimal voir dire before findings and sentence deliberations." Id. We conclude that none of these reasons legally justifies the lower appellate court's summary denial of appellant's post-trial claim of unlawful command influence. 2

Article 37, UCMJ, 10 USC § 837, states:

---

2  We reject the Government's claim of waiver. We have never held that an issue of unlawful command influence arising during trial may be waived by a failure to object or call the matter to the trial judge's attention. Cf. United States v. Weasler, 43 MJ 15 (1995) (pretrial agreement initiated by accused waived any objection to unlawful command influence in the preferral and referral of charges); United States v. Richter, 51 MJ 213, 224 (1999).

### § 837. Art. 37. Unlawfully influencing action of court

(a) No authority convening a general, special, or summary court-martial, nor any other commanding officer, may censure, reprimand, or admonish the court or any member, military judge, or counsel thereof, with respect to the findings or sentence adjudged by the court, or with respect to any other exercises of its or his functions in the conduct of the proceedings. No person subject to this chapter may attempt to coerce or, by any unauthorized means, influence the action of a court-martial or any other military tribunal or any member thereof, in reaching the findings or sentence in any case, or the action of any convening, approving, or reviewing authority with respect to his judicial acts. The foregoing provisions of the subsection shall not apply with respect to (1) general instructional or informational courses in military justice if such courses are designed solely for the purpose of instructing members of a command in the substantive and procedural aspects of courts-martial, or (2) to statements and instructions given in open court by the military judge, president of a special court-martial, or counsel.

(Emphasis added.)

We have long held that the use of command meetings to purposefully influence the members in determining a court-martial sentence violates Article 37, UCMJ. United States v. Levite, 25 MJ 334, 339 (CMA 1987); United States v. Cruz, 25 MJ 326, 329 (CMA 1987); United States v. Thomas, 22 MJ 388, 393 (CMA 1986); United States v. McCann, 8 USCMA 675, 676, 25 CMR 179, 180 (1958). Moreover, we have also held that the mere "confluence" of the timing of such meetings with members during ongoing

courts-martials and their subject matter dealing with court-martial sentences can require a sentence rehearing.  See United States v. Brice, 19 MJ 170, 172 n.3 (CMA 1985).

Here, appellant avers that there were two command officer meetings before and during her court-martial, which she and the officers of her panel attended.  She also avers that various court-martial situations on base and in the Air Force at large were discussed.  Furthermore, she asserts that comments were made that court-martial sentences were too lenient; that officers should always be punished more harshly than enlisted persons; and that the minimum sentences should be 1 year.  Finally, appellant points out that she, an officer, subsequently received a 1-year sentence at her court-martial.  If appellant's averments are true, then as in Brice, a confluence of timing and subject matter would exist.

The Government contends, however, that appellant's self-serving averments are not legally sufficient (or competent) to raise her post-trial claim.  We disagree.  In United States v. Ayala, 43 MJ 296, 300 (1995), this Court held that "[t]he quantum of evidence necessary to raise unlawful command influence is the same as that required to submit a factual issue to the trier of fact."  While not particularly delineating the proof required, we have generally held that it must be more than "mere speculation." See United States v. Biagase, 50 MJ 143, 150 (1999).  Here, appellant's post-trial statement was based on her own

observations (cf. United States v. Ruiz, 49 MJ 340, 348 (1998) (no abuse of discretion for convening authority to refuse to order post-trial hearing on basis of unsubstantiated assertions of unlawful command influence by counsel)), and it was detailed in nature. Cf. United States v. Johnston, 39 MJ 242, 244 (CMA 1994) (must be more than a bare allegation). Moreover, the record of trial, which contains an unexplained decision to delay any sessions on the date in question until the early afternoon, may be viewed as tending to corroborate appellant's allegation that there was a command meeting at that time. In the absence of any post-trial submission from the Government, we conclude appellant's allegations in this context are sufficient to raise a post-trial complaint of unlawful command influence. See United States v. Ayala, supra (some evidence to which a member might reasonably attach credit); see generally United States v. Ginn, 47 MJ 236, 248 (1997) (third principle: "if the affidavit is factually adequate on its face to state a claim of legal error. . . .").

Although we reject the Government's legal insufficiency claim, we are reluctant to order relief without a complete record concerning appellant's claim. A full development of the material facts surrounding these command meetings and their effect on appellant's court-martial is required. See United States v. Dykes, 38 MJ 270; see also United States v. Fricke, 53 MJ 149, 155 (2000). Accordingly, a DuBay hearing should be ordered. Id.

II

We also must address appellant's claim that her post-trial confinement violated Article 55, UCMJ, 10 USC § 855. Her claim is that "[w]hile confined at the USDB, [she] and her unborn child were intentionally placed at risk by knowingly exposing [them] to dangerous levels of lead, industrial chemicals and fumes and potentially contaminated food and water. [She] was denied proper prenatal care, and shackled and hand-cuffed without cause." Final Brief at 13. Appellant asks that we set aside her adjudged and automatic forfeitures as a remedy for her unlawful post-trial punishment. 3

We initially note that appellant asserts that she was 2 months pregnant when she was confined at the United States Disciplinary Barracks on February 11, 1998. She further asserts that she remained confined there until June of 1998, when she was transferred to the Federal Bureau of Prisons Facility in Fort Worth, Texas. Finally, she asserts that she was released on August 22, 1998, 3 months before her minimum release date because of action by the Army Clemency and Parole Board. It is conceded that her baby was born after her release from confinement, and there is no claim that either she or her baby was actually

---

3 We reject appellant's shackle and handcuff argument because she has not provided sufficient evidence to demonstrate that correction officials' use of shackles went beyond what was reasonable to assure safe control of a new inmate. See Art. 55, UCMJ ("The use of irons, single or double, except for the purpose of safe custody, is prohibited.").

injured as a result of the alleged conditions of her post-trial punishment.

We conclude that appellant has not demonstrated that the averred conditions of her confinement amounted to a violation of Article 55, UCMJ. See United States v. Avila, 53 MJ at 101. [4] As noted above, there is no showing that she was actually pained or injured as a result of these conditions. The absence of a showing of pain or injury, as well as the absence of a showing of punitive intent on the part of prison officials, undermine her legal claim. See United States v. Sanchez, 53 MJ 393, 395-96 (2000).

In addition, in United States v. Avila, supra at 102, this Court rejected a convicted prisoner's claim of improper punishment under Article 55, UCMJ, and under the Eighth Amendment where the "[a]ppellant ha[d] not demonstrated that the conditions of his confinement were more adverse than those faced by civilian prisoners whose claims of cruel and unusual punishment have been rejected by other courts." In view of relevant federal case law, we conclude that appellant's claim does not reach that level. See Coleman v. Rahija, 114 F.3d 778, 784-85 (8th Cir. 1997) (2-hour delay of medical services causing prisoner in labor extreme

_____

[4] We find it unnecessary for disposition of this case to determine whether appellant exhausted her administrative remedies to complain about her confinement conditions, to include her assertion that Army regulations prevented her from filing an Article 138, UCMJ, 10 USC § 938, complaint. See generally United States v. Miller, 46 MJ 248 (1997); United States v. Coffey, 38 MJ 290 (CMA 1993).

pain and suffering is legally sufficient); Archer v. Dutcher, 733 F.2d 14, 15 (2d Cir. 1984) (intentional delay in treatment purposefully causing extreme pain and later miscarriage is legally sufficient).

The decision of the United States Army Court of Criminal Appeals is set aside. The record of trial is returned to the Judge Advocate General of the Army for submission to a convening authority for a limited hearing on the issue of command influence. At the conclusion of the hearing, the judge will make specific findings of fact on that issue. A verbatim record of the proceedings will be submitted after authentication to the Court of Criminal Appeals for further review. Thereafter, Article 67(a)(3), UCMJ, 10 USC § 867(a)(3), shall apply.