UNITED STATES, Appellee

v.

Daniel A. DUGAN, Airman
U.S. Air Force, Appellant

No. 02-0561

Crim. App. No. 34477

United States Court of Appeals for the Armed Forces

Argued December 10, 2002

Decided June 2, 2003

CRAWFORD, C.J., delivered the opinion of the Court, in which GIERKE, EFFRON, BAKER, and ERDMANN, JJ., joined.

Counsel

For Appellant:  Major Kyle R. Jacobson (argued); Colonel Beverly B. Knott and Major Terry L. McElyea (on brief); Major Jeffrey A. Vires.

For Appellee:  Lieutenant Colonel Lance B. Sigmon (argued); Lieutenant Colonel LeEllen Coacher (on brief); Colonel Anthony P. Datillo.

Military Judge:  Mary M. Boone

**THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE FINAL PUBLICATION.**

Chief Judge CRAWFORD delivered the opinion of the Court.

Pursuant to mixed pleas, Appellant was convicted by a general court-martial of failure to go to his appointed place of duty, unauthorized absence, wrongful use of the drug commonly known as ecstasy, dishonorable failure to pay a just debt, and wrongful use and possession of a false military identification card, in violation of Articles 86, 112a, and 134, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. §§ 886, 912a, and 934, respectively. Appellant was sentenced by a panel of officer members to a bad-conduct discharge, confinement for nine months, total forfeitures, and reduction to E-1. The convening authority reduced the forfeitures but otherwise approved this sentence. The Air Force Court of Criminal Appeals affirmed the findings and sentence in an unpublished opinion. United States v. Dugan, No. ACM 34477 (A.F. Ct. Crim. App. March 20, 2002).

This Court specified the following issues for review:

I

> WHETHER A COURT MEMBER'S ALLEGATIONS
> REGARDING STATEMENTS MADE BY OTHER COURT
> MEMBERS DURING SENTENCE DELIBERATION
> REASONABLY RAISES A QUESTION AS TO "WHETHER
> EXTRANEOUS PREJUDICIAL INFORMATION WAS
> IMPROPERLY BROUGHT TO THE ATTENTION OF THE
> MEMBERS OF THE COURT-MARTIAL, WHETHER ANY
> OUTSIDE INFLUENCE WAS IMPROPERLY BROUGHT TO
> BEAR ON ANY MEMBER, OR WHETHER THERE WAS
> UNLAWFUL COMMAND INFLUENCE." MILITARY RULE
> OF EVIDENCE 606(b).

2

United States v. Dugan, No. 02-0561/AF

II

> IF SO, WHETHER THE MILITARY JUDGE ABUSED HER
> DISCRETION BY NOT CONDUCTING A POST-TRIAL
> SESSION UNDER ARTICLE 39(a), UCMJ, 10 U.S.C.
> § 839(a) (2000), TO INQUIRE INTO THE VALIDITY OF
> APPELLANT'S SENTENCE IN LIGHT OF THE ALLEGATIONS.

For the reasons that follow, we remand this case for a factfinding hearing pursuant to United States v. DuBay, 17 C.M.A. 147, 37 C.M.R. 411 (1967).

### Factual Background

Several weeks before Appellant's court-martial, the convening authority held a Commander's Call, at which many of the convening authority's subordinate commanders were present. One of the things the convening authority spoke about at that meeting was military justice, and exactly what he said became a topic of voir dire at Appellant's court-martial.

During group voir dire of the nine original court members, the military judge asked: "Does any member, having read these Charges and Specifications, believe that you would be compelled to vote for any particular punishment, solely because of the nature of these offenses?" All the members responded in the negative. The military judge then further asked: "Can each of you be fair, impartial, [and] open-minded in your consideration of an appropriate sentence?" All the members responded in the affirmative. Trial defense counsel also asked the members: "Do any of you feel that such an offense, using ecstasy, would

3

require a specific punishment?"  Again, they all responded in the negative.

Thereafter, trial defense counsel asked them:  "Was anyone – did anyone here attend [the convening authority's] Commander's Call several weeks ago?"  In answer, four members stated they attended the meeting and five stated they did not.  The four who attended were Colonel (Col) Berry, Lieutenant Colonel (LtCol) Spence, LtCol Freeman, and Major (Maj) Robertson.  Following up on these responses, trial defense counsel questioned Col Berry and LtCol Spence individually about the Commander's Call.  LtCol Freeman and Maj Robertson were not questioned individually about this subject.

As to Col Berry, trial defense counsel asked: "[T]he Commander's Call that you went to . . . do you remember [the convening authority] mentioning anything about drug use on base?"  Col Berry answered: "Yes, he was very emphatic about – and I don't think he used these words – but, essentially, that drug use was inconsistent with military service."  As to LtCol Spence, trial defense counsel asked: "[The] Commander's Call that you went to a couple of weeks ago.  Do you remember if he said anything about drug use?"  LtCol Spence answered: "'It seems like it's prevalent here on the Gulf Coast.'  I'm going to assume that he did the normal commander thing and then said, 'It's not compatible with military service.'"

In response to further questioning by trial defense counsel, Col Berry and LtCol Spence each indicated that no specific reference was made at the Commander's Call to Appellant or his impending court-martial.

At the conclusion of individual voir dire, three court members were challenged off the panel, including Col Berry. This left six court members to hear the contested portion of the case and then to adjudge an appropriate sentence. Of those six, three attended the Commander's Call, including LtCol Spence, who served as the president of the court-martial panel. The other three panel members did not attend the meeting, and a post-trial letter written by one of them – Second Lieutenant (2Lt) Greer – lies at the heart of this appeal.[1]

After appellant's court-martial, 2Lt Greer, the junior member of the court-martial panel, provided trial defense counsel a letter for submission to the convening authority as part of Appellant's request for clemency.[2] The letter described four concerns 2Lt Greer had regarding the panel members' sentencing deliberations. First, she worried that "everyone did not agree that [Appellant's mental illness] should be considered

---

[1] The letter was neither signed nor sworn to by 2Lt Greer. Nonetheless, during oral argument, the Government agreed it could be treated as such.

[2] See Rules for Courts-Martial 1105, 1107 (convening authority must consider clemency matters submitted by accused before taking final action on sentence).

as a mitigating factor."[3]   Second, she believed that because one

member stated Appellant would be enrolled in a substance abuse

program if he was further confined,[4] the other members "took it

as fact and used it in their decision making process."   Third,

she noted that "a couple of panel members expressed the notion

that a Bad Conduct Discharge was a 'given' for a person with

these charges[.]"

Finally, 2Lt Greer found "most disconcerting . . . the

mention of a recent Commander's Call in which [the convening

authority] was said to have discussed the increasing problem of

Ecstacy use[.]"   In that regard, she wrote:

> [A] panel member reminded us that our sentence
> would be reviewed by the convening authority
> and we needed to make sure our sentence was
> sending a consistent message.  Another member
> pointed out that we needed to make sure it
> didn't look like we took the charges too lightly
> because those reviewing our sentence wouldn't
> necessarily be aware of the mitigating factors.
> He or she said it was especially important
> because our names would be identified as panel
> members.

### Procedural Background

Having received this letter, trial defense counsel

requested that the military judge convene a post-trial session

pursuant to Article 39(a) so the defense could question the

---

[3] A defense expert testified that Appellant suffered from post-traumatic
stress disorder as a result of a brutal assault he experienced, and
that he could not be effectively treated while in confinement.

[4] Appellant served 150 days of pretrial confinement before his court-
martial commenced.

members about these matters.  The military judge denied the

request, however, and ruled as follows:

> That some members may have concluded [the
> accused's mental illness] deserved less
> weight than 2Lt Greer does not warrant such
> an invasion into their deliberative process.
> Also, that some member(s) might think that
> lengthier confinement might provide the accused
> with more treatment options is again a
> deliberative process this court does not feel
> appropriate to invade.  Similarly, after having
> heard all of the facts in this case, if some
> member[s] felt a bad conduct discharge was a
> "given" in this case, that does not impeach their
> responses during voir dire that they were not
> predisposed to giving such a sentence. . . .
>
> . . . There is no evidence that anyone within the
> panel exerted any command influence over any
> other panel member[,] and any references to [the
> convening authority's Commander's Call] during
> the deliberative process did not appear to chill
> the deliberative process. . . . This court does
> not find it appropriate to violate the sanctity
> of the deliberative process based upon the
> statement provided by 2Lt Greer.

At the Court of Criminal Appeals, Appellant "concede[d]

that most of the 'areas of concern' in the [letter] do not call

into question the validity of his sentence."  Dugan, No. ACM

34477, slip op. at 4.  However, he asserted that the letter

"raises the issue of unlawful command influence and that the

[military] judge erred by failing to convene a post-trial

hearing."  Id. at 3.  He therefore requested a DuBay hearing on

the matter to determine the validity of the sentence.  The Court

of Criminal Appeals denied that request, concluding there was

United States v. Dugan, No. 02-0561/AF

"no evidence of command influence."  Id. at 5.  In doing so,

that court stated:

> [T]he convening authority repeated what everyone
> in the Air Force has heard many times before,
> that drug use is incompatible with military
> service.  The issue before us is whether there is
> any evidence that the convening authority's
> purpose in repeating this often used phrase at a
> command meeting was to influence the court
> members.
>
> . . . The convening authority informed the
> attendees that drug use was prevalent on the gulf
> coast of Florida, and that it was incompatible
> with military service.  Neither of these
> assertions is novel or shocking, and common sense
> tells us that they were not intended to influence
> the outcome of any court-martial.
>
> We also find that the alleged comments that
> the convening authority would know their names
> and review the sentence, and that the sentence
> should not appear to be too lenient, do not
> support the [A]ppellant's claim of unlawful
> command influence.  Rather, they reflect the
> reality of the military justice system . . . .
> [C]ourt members know the convening authority
> selects them to serve on the court-martial and
> reviews the sentence.
>
> . . . [T]he convening authority's exercise of his
> statutory responsibility and the members'
> awareness  of that role, without more, does not
> amount to unlawful command influence because no
> policy or preference can be imputed to the
> commander for doing what he is required to do.

Id. at 4-5 (citations omitted).

## Discussion

### 1. Introduction

"[L]ong-recognized and very substantial concerns support

the protection of jury deliberations from intrusive inquiry."

Tanner v. United States, 483 U.S. 107, 127 (1987).  As a result,

"[d]eliberations of [court-martial] members ordinarily are not

subject to disclosure."  Rule for Courts-Martial [hereinafter

R.C.M.] 923 discussion.  "The purpose of this rule is to protect

freedom of deliberation, protect the stability and finality of

verdicts, and protect court members from annoyance and

embarrassment."  United States v. Loving, 41 M.J. 213, 236

(C.A.A.F. 1994) (internal quotations omitted).

Like its counterpart in the federal civilian system,

Military Rule of Evidence 606(b) [hereinafter M.R.E.] implements

this rule by stating:

> Upon an inquiry into the validity of the findings
> or sentence, a member may not testify as to any
> matter or statement occurring during the course
> of the deliberations of the members of the court-
> martial or, to the effect of anything upon the
> member's or any other member's mind or emotions
> as influencing the member to assent to or dissent
> from the findings or sentence or concerning the
> member's mental process in connection therewith,
> except that a member may testify on the question
> [1] whether extraneous prejudicial information
> was improperly brought to the attention of the
> members of the court-martial, [2] whether any
> outside influence was improperly brought to bear
> upon any member, or [3] whether there was
> unlawful command influence.  Nor may the member's
> affidavit or evidence of any statement by the
> member concerning a matter about which the member
> would be precluded from testifying be received
> for these purposes.

See also Fed. R. Evid. 606(b)(identical to M.R.E. 606(b) other

than reference to military issue of unlawful command influence);

R.C.M. 923, 1008 (standard for impeachment of findings and sentence).

Thus, under M.R.E. 606(b), there are three circumstances that justify piercing the otherwise inviolate deliberative process to impeach a verdict or sentence: "(1) when extraneous information has been improperly brought to the attention of the court members; (2) when outside influence has been brought to bear on a member; and (3) when unlawful command influence has occurred." United States v. Accordino, 20 M.J. 102, 104 (C.M.A. 1985). Appellant's case involves the first and third of these categories.

## 2. Extraneous Information

The first two concerns 2Lt Greer expressed in her letter were: (1) other court members did not believe, as she did, that Appellant's mental condition was a mitigating factor to consider when determining an appropriate sentence, and (2) other court members may have been influenced by one member's statement that Appellant would be enrolled in a substance abuse program if he was sentenced to confinement. As to the first of these concerns, we agree with the military judge that the members were free to assign to Appellant's mental condition whatever weight they chose, including no weight at all. Such a decision "raises [nothing] other than internal matters regarding the deliberations of the members of the court-martial on sentence"

and, therefore, cannot be inquired into post-trial. United States v. Straight, 42 M.J. 244, 250 (C.A.A.F. 1995); see M.R.E. 606(b).

Regarding the possibility that one of the members informed the others that Appellant would be enrolled in a substance abuse program if sentenced to confinement, appellate defense counsel argues this was "extraneous prejudicial information" within the meaning of M.R.E. 606(b) because "if relied upon," the members "would increase the term of confinement they would otherwise impose in order to 'help' [A]ppellant[.]"  This, counsel argues, calls into question the validity of Appellant's sentence and justifies a rehearing.  We disagree.

In Straight, we stated:

[E]vidence of information acquired by a court member during deliberations from a third party or from outside reference materials may be extraneous prejudicial information which is admissible under [M.R.E.] 606(b) to impeach the findings or sentence.  [However], the general and common knowledge a court member brings to deliberations is an intrinsic part of the deliberative process, and evidence about that knowledge is not competent evidence to impeach the members' findings or sentence.

42 M.J. at 250.

Here, even if one member did tell the others that Appellant would receive substance abuse counseling if sentenced to confinement, and even if the others did factor that into their sentence determination, it would not involve extraneous

prejudicial information. To the contrary, it "would fall squarely within the deliberative process which is protected by [M.R.E.] 606(b)." United States v. Combs, 41 M.J. 400, 401 (C.A.A.F. 1995)(court member's statement that sentence would have been less if appellant had cooperated with police was not competent evidence to impeach sentence). Thus, it cannot be considered by this or any other court as impeaching the validity of Appellant's sentence. See McDowell v. Calderon, 107 F.3d 1351, 1366-67 (9th Cir. 1997)(juror's statement to other jurors about parole consequences of sentence not admissible under Fed. R. Evid. 606(b)); Silagy v. Peters, 905 F.2d 986, 1008-09 (7th Cir. 1990)(juror's statements to other jurors about impact of death versus life sentence on actual time served not admissible under Fed. R. Evid. 606(b)); United States v. Motsinger, 34 M.J. 255, 257 (C.M.A. 1992)(letter from court-martial president concerning reasons for imposing bad-conduct discharge "may not be considered").

### 3. Unlawful Command Influence

The third and fourth concerns expressed by 2Lt Greer in her letter were: (1) some members stated a bad-conduct discharge was a "given" in this case, and (2) some members made statements suggesting they were influenced by the message put out by the convening authority at his Commander's Call. As to these concerns, we conclude they make a DuBay hearing necessary to

determine whether unlawful command influence existed during the sentencing phase of Appellant's court-martial.  Under the circumstances of this case, such statements fall squarely within the "unlawful command influence" exception of M.R.E. 606(b) and are not protected from disclosure.

We begin by noting that to the extent the military judge and the Court of Criminal Appeals concluded Appellant did not meet his initial burden of raising the issue of unlawful command influence, they erred.  At trial and on appeal, "[t]he defense has the initial burden of producing sufficient evidence to raise unlawful command influence."  United States v. Ayala, 43 M.J. 296, 299 (C.A.A.F. 1995).  "The burden of proof is low, but more than mere allegation or speculation.  The quantum of evidence required to raise unlawful command influence is 'some evidence.'"  United States v. Stoneman, 57 M.J. 35, 41 (C.A.A.F. 2002)(quoting United States v. Biagase, 50 M.J. 143, 150 (C.A.A.F. 1999)).

"At trial, the accused must show facts which, if true, constitute unlawful command influence, and that the alleged unlawful command influence has a logical connection to the court-martial, in terms of its potential to cause unfairness in the proceedings."  Biagase, 50 M.J. at 150.  On appeal, an appellant must "(1) show facts which, if true, constitute unlawful command influence; (2) show that the proceedings were

unfair; and (3) show that the unlawful command influence was the cause of the unfairness." Id. (citing United States v. Stombaugh, 40 M.J. 208, 213 (C.M.A. 1994)).  The defense has met its burden in this appeal.

"We have long held that the use of command meetings to purposefully influence the members in determining a court-martial sentence" constitutes unlawful command influence in violation of Article 37, UCMJ, 10 U.S.C. § 837 (2000).[5]  United States v. Baldwin, 54 M.J. 308, 310 (C.A.A.F. 2001).  We also have held that regardless of a commander's intent, "the mere 'confluence' of the timing of such meetings with members during ongoing courts-martials and their subject matter dealing with court-martial sentences can require a sentence rehearing."  Id. Thus, in United States v. Brice, 19 M.J. 170 (C.M.A. 1985), we reversed and remanded for a new trial because the members of an ongoing court-martial attended a Commandant's meeting where drug problems in the military were discussed.  In doing so, however, we also stated:

> We do not in any way wish to be viewed as
> condemning the contents of the Commandant's
> remarks since the drug problem in the military
> demands command attention; nor do we feel that
> such remarks necessarily constitute illegal
> command influence.  Instead, we base our decision
> on the confluence of subject and timing,

---

[5] Article 37, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. § 837 (2000), states: "No person subject to [the UCMJ] may attempt to coerce or, by any unauthorized means, influence the action of a court-martial . . . or any member thereof, in reaching the findings or sentence in any case[.]"

United States v. Dugan, No. 02-0561/AF

> particularly as they affect the minds – however
> subtly or imperceptibly – of the triers of
> fact[.]

Id. at 172 n.3 (citing United States v. Grady, 15 M.J. 275, 276 (C.M.A. 1983)).

With these principles in mind, we turn now to Appellant's case. At the outset, we note there is nothing in 2Lt Greer's letter to indicate the convening authority had any improper intent when he conducted the Commander's Call, or that he purposefully used that meeting to influence Appellant's or any other court-martial. Nor does the record in its current form contain any other evidence suggesting such an intent or design on the part of the convening authority. As a result, we have no reason presently to question either the lawfulness of the Commander's Call or the correctness of the Court of Criminal Appeals's finding that the content of the Commander's Call was "neither . . . novel or shocking."

We also recognize that Appellant's court-martial took place several weeks after the Commander's Call, in stark contrast to the Baldwin and Brice cases, where court members attended command meetings while they were actually sitting as court-martial panels. We are therefore mindful that to the extent the timing of such meetings -- coupled with their content -- alone gives rise to an inference of unlawful command influence, such

an inference is not warranted in appellant's case, given the record as it now stands.[6]

We hold, however, that 2Lt Greer's letter does constitute some evidence that unlawful command influence may have taken place during the sentencing phase of Appellant's court-martial. 2Lt Greer's letter is more than mere speculation because it is "detailed" and "based on her own observations." Baldwin, 54 M.J. at 311. Moreover, it contains assertions which, if true, suggest that members of Appellant's court-martial who attended the Commander's Call unfairly based his sentence, at least in part, on a concern they would be viewed unfavorably by the convening authority (their commanding officer) if they did not impose a sentence harsh enough to be "consistent" with the convening authority's "message" at the Commander's Call that drug use is incompatible with military service.

Such a possibility we cannot ignore, for it is exactly this type of command presence in the deliberation room -- whether intended by the command or not -- that chills the members' independent judgment and deprives an accused of his or her constitutional right to a fair and impartial trial. For these reasons, we conclude that a DuBay hearing is necessary to determine whether unlawful command influence existed during the

---

[6] We also recognize that Appellant's case, as in United States v. Brice, 19 M.J. 170 (C.M.A. 1985), involves both a court-martial for drug use and a command meeting dealing with drug use in the military.

sentencing phase of Appellant's court-martial.  Furthermore, because Appellant has successfully raised the issue of unlawful command influence, it is the Government that must now rebut the presumption of unlawful command influence

> (1) by disproving the predicate facts on which the allegation of unlawful command influence is based; (2) by persuading the [DuBay] judge . . . that the facts do not constitute unlawful command influence; . . . or [3] . . . by persuading the . . . [DuBay judge] that the unlawful command influence had no prejudicial impact on the court-martial.

Biagase, 50 M.J. at 151.  "Whichever tactic the Government chooses, the quantum of evidence required is proof beyond a reasonable doubt."  Stoneman, 57 M.J. at 41.

Having said that, we note that when unlawful command influence has been directed at court members, the Government's third option under Biagase is limited by M.R.E. 606(b).  This rule prohibits inquiry into two types of matters: (1) "any matter or statement occurring during the course of the deliberations," and (2) "the effect of anything upon [a] member's or any other member's mind or emotions as influencing the member to assent to or dissent from the findings or sentence or concerning the member's mental process in connection therewith[.]"

The rule has three exceptions to the first prohibition, one of which permits testimony about "any matter or statement" occurring during the deliberations when there is a "question

17

whether . . . there was unlawful command influence." The exceptions, however, do not permit circumvention of the second prohibition (inquiry into the effect on a member). See Stephen A. Saltzburg, et al., Military Rules of Evidence Manual 722 (4th ed. 1997)("Members may testify "with respect to objective manifestations of impropriety" but may not testify "if the alleged transgression is subjective in nature."); see also 3 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 606.04[2][c] (2d ed. 1997)(citing examples of subjective and objective evidence of impropriety).

Thus, in this case, M.R.E. 606(b) permits voir dire of the members regarding what was said during deliberations about the commander's comments, but the members may not be questioned regarding the impact of any member's statements or the commander's comments on any member's mind, emotions, or mental processes.

If the military judge who presides at the DuBay hearing is not satisfied beyond a reasonable doubt that unlawful command influence did not exist during the sentencing phase of Appellant's court-martial, or that one or more members did not exert the influence of superior rank on a junior member or purport to wear the mantle of the convening authority by conveying to the other members his or her interpretation of the convening authority's message, that judge shall set aside

Appellant's sentence and order a sentence rehearing.  If, however, the military judge finds there were no infirmities in the sentencing process, he or she shall return the record, along with the military judge's findings of fact and conclusions of law, to the Court of Criminal Appeals for further review under Article 66(c), UCMJ, 10 U.S.C. § 866(c) (2000).

Finally, in conducting the DuBay proceeding, the military judge shall not voir dire any member as to "the effect of anything upon [a] member's . . . mind or emotions as influencing [a] member to assent to or dissent from the findings or sentence or . . . [a] member's mental process in connection therewith." M.R.E. 606(b).

## Decision

The decision of the United States Air Force Court of Criminal Appeals is affirmed as to findings but set aside as to sentence.  The record of trial is returned to the Judge Advocate General of the Air Force for submission to a convening authority for a hearing on Appellant's claim of unlawful command influence.  If a hearing is impracticable, the convening authority may set aside the sentence and order a sentence rehearing.  If a hearing is conducted, the military judge shall make findings of fact and conclusions of law and then shall either order a sentence rehearing or return the record of trial

to the Court of Criminal Appeals for further review consistent with this opinion.