*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
DALY, GROSS, and de GROOT
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Jonatan O. ROSARIOMARTINEZ**
Corporal (E-4), U.S. Marine Corps
*Appellant*

**No. 202300154**

_____

Decided: 18 December 2024

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Ryan C. Lipton (arraignment)
Benjamin A. Robles (motions)
Adam L. Workman (trial and post-trial)

Sentence adjudged 27 January 2023 by a general court-martial convened at Marine Corps Base Camp Lejeune, North Carolina, consisting of members with enlisted representation. Sentence in the Entry of Judgment: confinement for 18 months and a dishonorable discharge.[1]

---

[1] Appellant was credited with 32 days' confinement credit.

For Appellant:
*Lieutenant Morgan Sanders, JAGC, USN*

For Appellee:
*Lieutenant Rachel E. Noveroske, JAGC, USN*
*Major Mary-Claire Finnen, USMC*

Judge GROSS delivered the opinion of the Court in which Senior Judge DALY and Judge de GROOT joined.

_____

**PUBLISHED OPINION OF THE COURT**

_____

GROSS, J:

For over one hundred years, courts in the United States have flatly prohibited the admission of juror testimony to impeach a verdict, except in sharply limited circumstances.[2] The Supreme Court, explaining the prohibition, stated

> There is little doubt that post-verdict investigation into juror misconduct would in some instances lead to the invalidation of verdicts reached after irresponsible or improper juror behavior. It is not at all clear, however, that the jury system could survive such efforts to perfect it. Allegations of juror misconduct, incompetency, or inattentiveness, raised for the first time days, weeks, or months after the verdict, seriously disrupt the finality of the process.[3]

Appellant now asks us to condone such an investigation, invade the deliberative process of his court-martial by attaching declarations of two members relating to their closed deliberations, and reverse his conviction. We decline to do so.

A general court-martial composed of members with enlisted representation convicted Appellant, contrary to his pleas, of one specification of sexual assault

---

[2] *Tanner v. United States*, 483 U.S. 107, 117 (1987).

[3] *Id*. at 120.

in violation of Article 120, Uniform Code of Military Justice (UCMJ).[4] The military judge imposed a sentence of confinement for 18 months and a dishonorable discharge.

Before us, Appellant asserts two assignments of error which we rephrase as follows: (1) whether unlawful command influence (UCI) occurred during the members' deliberations; and (2) whether Appellant was entitled to a unanimous verdict.[5] In support of Appellant's first AOE, he sought to attach three declarations—two from members of the court-martial and one from his trial defense counsel—which the Government opposed. We then ordered briefing on six specified issues relating to Appellant's motion to attach.[6] Having considered the entire record of trial and the briefs of the parties, including the briefs on the specified issues, we now set forth our reasons for our previous denial of Appellant's motion to attach.

---

[4] 10 U.S.C. § 920.

[5] We find that pursuant to *United States v. Anderson*, 83 M.J. 291 (C.A.A.F. 2023), Appellant is not entitled to a unanimous verdict. On 3 June 2024, Appellant filed a motion to file a supplemental AOE claiming that this Court erred in denying his motion to attach supplemental matters to the record in support of his first AOE. On 24 June 2024, we denied Appellant's motion to file a supplemental AOE stating that Appellant's claim of error had already been properly preserved and that the reason for our denial of the motion to attach would be addressed in our opinion on the merits.

[6] I: Should the affidavits be analyzed as potential evidence of unlawful command influence, improper outside influence, or extraneous prejudicial information?

II: Is U*nited States v. Jessie*, 79 M.J. 437 (C.A.A.F. 2020), the appropriate framework to analyze the motion to attach?

III: If *Jessie* is the proper framework for this Court's analysis, where was the issue raised in the record?

IV: If this Court determines a portion of an affidavit may be attached to the record, must that affidavit be attached in its entirety or may it be redacted?

V: Under what legal theory would trial defense counsel's affidavit be attached to the record?

VI: Would a violation of the military judge's order proscribing the parties and their agents from communicating with the members affect the competency of the evidence contained in the affidavits being offered?

Upon review of the record as a whole, and Appellant not having challenged the factual sufficiency of his convictions, we find that Appellant's conviction and sentence are correct in law, that his sentence is correct in law and fact, and that no prejudicial error to his substantial rights occurred.[7]

## I. BACKGROUND

Appellant was charged with two specifications of sexual assault, one for committing a sexual act on Lance Corporal (LCpl) Oscar without her consent, and one for committing a sexual act on LCpl Oscar when he knew, or reasonably should have known, that she was asleep. The two specifications were based upon the same incident and were pleaded in the alternative based on contingencies of proof. The members convicted Appellant of sexual assault without consent, but acquitted him of the specification that alleged that LCpl Oscar was asleep. Appellant then elected to be sentenced by military judge.

A lengthy exposition of the facts surrounding Appellant's conviction is largely unnecessary for our consideration of the assigned errors, except to note that on the night in question, the evidence showed that Appellant sexually assaulted LCpl Oscar after the two had been drinking together at a bar earlier in the evening. At trial, Appellant's defense focused largely on issues of consent and mistake of fact as to consent.

Appellant elected to be tried by members with enlisted representation. During voir dire, the military judge asked the detailed members whether any of them had received training during their time in the Marine Corps about what "consent" means and what qualifies as consent. All members said that they had. Shortly after asking that question, the military judge excused the members and took a brief recess. He then brought back all of the members and read them the definition of consent from the Military Judges' Benchbook.[8] After reading the legal definition of consent, the military judge asked if the members agreed to follow the instruction and all members agreed that they would.

### 1. *Voir Dire and Captain Jordan.*

During individual voir dire, the military judge and counsel questioned Captain (Capt) Jordan, who indicated that he had been confused about what definition of consent to use as a potential member in hearing the case. Capt Jordan stated that he felt that the Marine Corps had a "black and white definition" of

---

[7] Articles 59 and 66, UCMJ.

[8] Dep't of the Army Pam. 27-9, Military Judges' Benchbook, para. 3a-44-2, Note 5.

what consent is, and that under that definition, if "an individual does drink alcohol they can no longer consent."[9] Capt Jordan also described a conversation that he had with the other potential members during the brief recess before the military judge read them the legal definition of consent.

Capt Jordan described this conversation as focusing on the definition of consent and the "Marine Corps policy" on consent. He said that he did not direct his question at any particular potential member, but rather "just opened [it] to the room."[10] After the military judge again asked Capt Jordan if he could follow the instruction that the military judge had given on consent, Capt Jordan said that he could. However, Capt Jordan went on to say that he believed that Marine Corps policy on consent dictated that a person cannot consent after drinking alcohol, and that policy did not conflict with the military judge's definition. The Government challenged Capt Jordan for actual bias and the Defense joined the challenge, which the military judge granted.

After Capt Jordan's disclosure regarding the discussion in the deliberation room, the military judge and the parties asked some, but not all, of the potential members about Capt Jordan's discussion regarding the definition of consent. The military judge imposed no limitations on voir dire by either side, and both sides engaged in extensive questioning of each member of the venire. Appellant and the Government each challenged two members for cause, with Appellant joining in both Government challenges (one of which was the previously mentioned Capt Jordan). The military judge granted all four challenges for cause, and eight panel members were ultimately selected to hear Appellant's case.

Of the empaneled members, two recalled the discussion, three did not recall the discussion, and three were not asked about it. All of the empaneled members affirmed that they would follow the military judge's definition of consent, and all eight said they would remain open to evidence that a person could consent to sex after drinking alcohol, even if the person drank to the point of memory loss.

    *2. Post-trial and Captain Sierra.*

After trial, Appellant's two military trial defense counsel (TDC), at the urging of their superiors, reached out to members of the panel to conduct a "hot

---

[9] R. at 140-142

[10] R. at 141.

wash."[11] The senior member of the panel, Capt Sierra, agreed to meet with TDC to discuss the trial. At one point during the meeting, Capt Sierra asked TDC a question about how "hung juries" work in the military. Appellant's TDC explained that under court-martial procedures a panel is not required to be unanimous, and if the number of votes for guilty was less than three quarters of the panel that would result in a not-guilty verdict. Capt Sierra then told Appellant's TDC that the panel had numerous votes where three or more members voted for a finding of not guilty before finally reaching six votes for guilty.

Appellant's detailed TDC then sought further guidance from their superiors before asking Capt Sierra to sign an affidavit attesting to what he had just told them. Capt Sierra signed the affidavit and Appellant filed a motion for a post-trial Article 39(a) session seeking to "correct the findings worksheet" pursuant to R.C.M. 922. Capt Sierra's affidavit did not include any information regarding what the members discussed during deliberations, only referring to the multiple votes taken.

Prior to holding a post-trial Article 39(a) session under Rule for Courts-Martial (R.C.M.) 1104 on the Defense motion, the military judge sent an email to all counsel, stating "all parties and their agents are ORDERED to CEASE and DESIST communicating with any members."[12] The military judge then heard argument on the Defense motion, found that Capt Sierra's affidavit was a prohibited disclosure under Mil. R. Evid. 509 and that it did not meet any of the exceptions set forth in Mil. R. Evid. 606. Specifically, the military judge found that the affidavit did not raise any claim of extraneous prejudicial information being brought to the members' attention, nor did it allege that unlawful command influence or any other outside influence was improperly brought to bear on any member. With respect to the Defense claim that "a mistake was made in entering the finding" the military judge found that the members did not make a mistake, but rather correctly announced their findings even though the affidavit appeared to state that the members had violated the military judge's instructions on voting and reconsideration.

### 3. *Appeal, Capt Romeo, 1stLt Hotel, and SSgt Papa.*

On appeal, Appellant sought to attach three additional declarations: two from other members of Appellant's court-martial and one from one of Appellant's TDC, Capt Romeo. We denied Appellant's motion to attach on 10 May

---

[11] R. at 790. A "hot wash" is a term used by military personnel for a meeting between participants to conduct a quick review of the high and low points of an exercise. "A QDR "Hot Wash" - War on the Rocks" available at https://warontherocks.com/2014/03/a-qdr-hot-wash/ (last visited 2 December 2024).

[12] App. Ex. LXVII (capitalization in original).

2024, concluding that the declarations of the members constituted incompetent evidence. We describe them below and provide analysis to explain what drove our decision to deny the motion to attach.

The declarations of 1st Lieutenant (1stLt) Hotel and Staff Sergeant (SSgt) Papa described the same voting procedure as does Capt Sierra's affidavit, but added additional details. 1stLt Hotel stated that after the members initial vote failed to produce six votes for either a conviction or acquittal that "some members discussed the USMC and SAPR policy relating to: 'having to believe her' when discussing the alleged victim."[13] SSgt Papa stated that, during further deliberations after the initial vote "all members discussed the USMC and SAPR policy relating to: if someone has been drinking then they can't consent to sexual activities."[14]

Captain Romeo's declaration merely stated that he was unaware that members had discussed either of the aforementioned policies during deliberations. He further stated that if he had known that the policies were discussed, he would have filed a motion for unlawful command influence.

## II. DISCUSSION

### A. The motion to attach the affidavits of 1st Lieutenant Hotel, Staff Sergeant Papa, and Captain Romeo is denied.

To assist and inform our decision whether to attach the declarations to the record, we ordered the parties to brief six specified issues. Having now considered the briefs of the parties and the declarations, we find that we can resolve the question of whether to attach the declarations based on our finding that they do not meet any of the exceptions under Mil. R. Evid. 606(b) and are therefore not competent evidence.[15]

---

[13] Decl. of 1stLt Hotel.

[14] Decl. of SSgt Papa.

[15] The Government urges us to find that *Jessie* precludes attaching evidence of UCI that was not raised in the record at trial as a whole. While we need not decide whether *Jessie* acts as a bar to our consideration of matters outside the record related to UCI, we note that our sister court, in a well-reasoned opinion, found that the CAAF's opinion in *Jessie* did not alter the authority of a CCA to attach matters relating to UCI to the record. *See United States v. Tucker*, 82 M.J. 553 (C.G. Ct. Crim. App. 2022).

*1. Law*

a. Competence of member testimony and declarations

Military Rule of Evidence 509 states, "[e]xcept as provided in Mil. R. Evid. 606, the deliberations of … courts-martial … are privileged to the extent that such matters are privileged in trial of criminal cases in the United States district courts…"[16] Mil. R. Evid. 606 prohibits a member from testifying "about any statement made or incident that occurred during the deliberations of that court-martial."[17] The rule recognizes three exceptions: (1) whether extraneous prejudicial information was improperly brought to the members attention; (2) whether unlawful command influence or other outside influence was improperly brought to bear on any member; and (3) whether a mistake was made in entering the findings or sentence.[18]

"In general, inquiries into jury verdicts and deliberations are looked upon with strong disfavor."[19] The Manual for Courts-Martial (MCM) implements this general restriction on questioning members about their deliberations. In other cases we have found that members cannot be questioned about their deliberations and voting except as provided in Mil. R. Evid. 606. The MCM "prohibits questioning court members about their deliberations and voting except as provided in Mil. R. Evid. 606. R.C.M. 923 permits the impeachment of findings which are proper on their face only when an exception contained in Mil. R. Evid. 606 exists."[20]

"The purpose of this rule is to protect freedom of deliberation, protect the stability and finality of verdicts, and protect court members from annoyance and embarrassment."[21] "[A]n appellant has the burden of showing that something was said or done during deliberations which falls under an exception contained in R.C.M. 923 and Mil. R. Evid. 606(b) that reasonably could have affected the verdict before appellant is entitled to depositions or in-court questioning of court members regarding their deliberations."[22]

---

[16] Mil. R. Evid. 509.

[17] Mil. R. Evid. 606(b)(1).

[18] Mil. R. Evid. 606(c).

[19] *United States v. Thomas*, 39 M.J. 626, 632 (N-M.C.M.R. 1993) (cleaned up).

[20] *Id.*

[21] *United States v. Loving*, 41 M.J. 213, 236 (C.A.A.F. 1994).

[22] *Thomas*, 39 M.J. at 634.

Courts have repeatedly cautioned that even when an exception to the general prohibition on receiving evidence of deliberations might apply, the extent of inquiry into deliberations must be limited.

> We caution counsel and court members to be mindful of the obligation to protect the secrecy of deliberations. Even when the exceptions to Mil.R.Evid. 606(b) are triggered, disclosures should be limited to the fact and nature of the extrinsic evidence; the impact of the extrinsic evidence or influence on the deliberations or voting should not be disclosed.[23]

Pronouncements like this demonstrate that the overarching policy with respect to questioning members about their deliberations is that such questioning is to be avoided unless narrowly tailored to a specific exception.

In response to our first specified issue, Appellant only claimed that the declarations were evidence of unlawful command influence. He made no attempt to claim that they were evidence of extraneous prejudicial information or other outside improper influence. We therefore analyze the declarations primarily under the theory of UCI.[24]

### b. Unlawful Command Influence

"Unlawful command influence is the mortal enemy of military justice. Where it is found to exist, judicial authorities must take those steps necessary to preserve both the actual and apparent fairness of the criminal proceeding."[25] To make a prima facie case of actual unlawful command influence, an accused bears the initial burden of presenting "some evidence" of UCI—

---

[23] *United States v. Straight*, 42 M.J. 244, 251 (C.A.A.F. 1995).

[24] We also considered whether the declarations were evidence of extraneous prejudicial information. However, the caselaw supports that extraneous prejudicial information does not include matters that a member brings to the deliberation room, including knowledge of training or policy. *Straight*, 42 M.J. at 250 ("[E]vidence of information acquired by a court member during deliberations from a third party or from outside reference materials may be extraneous prejudicial information which is admissible under Mil.R.Evid. 606(b) to impeach the findings or sentence. [But] the general and common knowledge a court member brings to deliberations is an intrinsic part of the deliberative process, and evidence about that knowledge is not competent evidence to impeach the members' findings or sentence.").

[25] *United States v. Lewis*, 63 M.J. 405, 407 (C.A.A.F. 2006) (cleaned up).

facts that if true would constitute UCI.[26] "Although this burden is low, the accused must present more than mere allegations or speculation."[27]

"[T]he use of command meetings to purposefully influence the members in determining a court-martial sentence violates Article 37, UCMJ."[28] However, even when there is no intent to influence a court-martial proceeding, "the mere 'confluence' of the timing of such meetings with members during ongoing courts-martials and their subject matter dealing with court-martial sentences can require [a rehearing]."[29]

In *United States v. Dugan,* the Court of Appeals for the Armed Forces (CAAF) confronted the issue of what constituted "some evidence" of UCI during deliberations.[30] In *Dugan,* a member sent the defense counsel a letter setting forth concerns with respect to comments made by other members during deliberation on sentence. The CAAF identified two statements that required additional fact finding and the piercing of the deliberative privilege under Mil. R. Evid. 509 and 606. The first was a comment that a bad-conduct discharge "was a given" for the types of charges of which the Appellant was convicted. The second was a statement by a member of the panel "that our sentence would be reviewed by the convening authority and we needed to make sure our sentence was sending a consistent message." The letter went on to state that "[a]nother member pointed out that we needed to make sure it didn't look like we took the charges too lightly … He or she said it was especially important because our names would be identified as panel members."[31]

We recently addressed UCI in the context of deliberation in the case of *United States v. Longshore.*[32] There, the appellant sought to introduce evidence in the form of an affidavit from a member who claimed that the members conducted straw polls, read their notes to each other, and that one member commented that "as servicemembers, [they had] a duty to send a message that

---

[26] *United States v. Gilmet,* 83 M.J. 398, 403 (C.A.A.F. 2023).

[27] *Id.*

[28] *United States v. Baldwin,* 54 M.J. 308, 310 (C.A.A.F. 2001).

[29] *Id.* (Citing *United States v. Brice,* 19 M.J. 170, 172 n. 3 (C.M.A. 1985)).

[30] *United States v. Dugan,* 58 M.J. 253, 258 (C.A.A.F. 2003).

[31] *Id.* at 255.

[32] *United States v. Longshore,* No. 202200177, 2024 CCA LEXIS 56 (N-M. Ct. Crim. App. Feb, 6, 2024), *rev. denied,* __M.J.__ , 2024 CAAF LEXIS 414, (C.A.A.F. July 19, 2024).

sexual assault is not tolerated in the Navy."[33] We determined there that the language used in deliberations did not raise "some evidence" of UCI.

Appellant invites our attention to our sister court's decision in *United States v. Schloff*, where the Army Court of Criminal Appeals (ACCA) reversed a conviction based on UCI during deliberations on findings.[34] In *Schloff*, the ACCA ordered a *DuBay* hearing[35] after one of the members averred that another member had argued that the Army could not afford to seem weak on sexual harassment and sexual assault.[36] Following the *DuBay* hearing, the ACCA found that the Government could not prove beyond a reasonable doubt that UCI had not impacted the appellant's court-martial.[37]

The CAAF has considered the issue of sexual assault training and whether the mere mention of such training constituted UCI in *United States v. Washington*.[38] In *Washington*, the trial counsel introduced testimony that the appellant had attended such training (referred to in the Army as "SHARP training") as evidence rebutting the appellant's reasonable mistake of fact defense. In rejecting the appellant's UCI claim, the CAAF stated, "[t]he SHARP training was not done for the purpose of influencing the trial, no one argued at trial that the SHARP training reflected the law, the military judge properly instructed the members, and the members agreed that they could follow the military judge's instructions."[39]

### 2. Discussion

We hold that we cannot consider the declarations of either 1stLt Hotel or SSgt Papa, because the declarations do not fit within one of the very narrow exceptions to the general prohibition on members providing evidence of deliberations. Because we determined that we cannot attach the declarations of 1stLt Hotel and SSgt Papa, the declaration of Capt Romeo is irrelevant to any matter raised in the record.

---

[33] *Id.* at *19.

[34] *United States v. Schloff,* No. ARMY 20150724, 2018 CCA LEXIS 350 (Army Ct. Crim. App. Feb. 5, 2018) (unpublished).

[35] *United States v. DuBay*, 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967).

[36] *Schloff*, 2018 CCA LEXIS 350 at *2.

[37] *Id.*

[38] *United States v. Washington*, 80 M.J. 106 (C.A.A.F. 2020).

[39] *Id.* at 113.

In reaching our decision on the whether the declarations here show "some evidence" of UCI, we find no reason to depart from our decision in *Longshore*, that a generalized statement by a member regarding a "duty to send a message that sexual assault is not tolerated in the Navy" is insufficient to meet an appellant's initial burden under *Biagase*.[40] We find the circumstances of Appellant's case to be more akin to that of *Longshore* and *Washington* than the circumstances involved in *Dugan* and *Schloff*.

We begin by noting that controlling precedent conclusively holds that much of the declarations of 1stLt Hotel and SSgt Papa are completely covered by the privilege in Mil. R. Evid. 509 and therefore completely inappropriate for inclusion in a declaration. These matters include discussing the number of times the members voted and the number of members who voted for a specific outcome.[41] The inclusion of these statements in the declarations was a violation of black letter law protecting the sanctity of the deliberations of the court-martial, and we agree completely with the military judge's order to the parties to cease and desist from communicating with the members, particularly regarding these topics.[42]

The central issue for this case, however, is whether the members' statements regarding the discussion of various alleged Marine Corps and "SAPR" policies fall within an exception contained in Mil. R. Evid. 606(b). These statements are specifically: "During … deliberations, some members discussed the

---

[40] *Longshore*, 2024 CCA LEXIS 56 at *20.

[41] *See Loving*, 41 M.J. at 237; *Thomas*, 39 M.J. at 634 ("Even prior to the adoption of the Military Rules of Evidence, post-trial affidavits alleging errors in voting procedures, to include erroneous reconsideration, were considered incompetent evidence.")

[42] The parties did not fully brief the question of whether the military judge's order had continuing effect on Appellate Defense Counsel, or whether a violation of such an order would render the declarations at issue invalid. While we need not consider the matter to resolve Appellant's case, we once again pause to disavow the dubious practice of counsel conducting post-trial interviews of members. Nor should litigants view our decision today as an invitation to seek more detailed information from members to determine whether UCI occurred in the deliberation room. The military judge was well within his authority to restrict the parties' communications with members in his ruling. Federal Courts have repeatedly upheld such orders and required counsel to petition the court for permission to interview jurors. "Courts simply will not denigrate jury trials by afterwards ransacking the jurors in search of some ground, not previously supported by evidence, for a new trial." *United States v. Riley*, 544 F. 2d 237, 242 (5th Cir. 1976). Further, as the CAAF noted, "[t]o the extent there is any justification for post-trial interviews (of members), impeaching a verdict is not one of them." *United States v. Ovando-Moran*, 48 M.J. 300, 304 (C.A.A.F. 1998).

USMC and SAPR policy relating to: having to believe her when discussing the alleged victim";[43] and "during … deliberations, all members discussed the USMC and SAPR policy relating to if someone has been drinking alcohol then they can't consent to sexual activities."[44] After evaluation of the contents of the declarations, however, we find that the declarations do not contain "some evidence" of UCI and therefore cannot be attached to the record. These references to SAPR training are more innocuous than the explicit use of training by the Government (over Defense objection) that the CAAF held did not constitute UCI in *Washington*. They were not introduced by the Government, and the military judge repeatedly admonished the members to only consider the evidence and law as he instructed.

Regarding 1stLt Hotel's declaration, we find no evidence in the record regarding a "USMC [or] SAPR policy relating to: having to believe" an alleged victim, nor does Appellant ask us to take judicial notice that such a policy even exists. We are therefore left without any information regarding what 1stLt Hotel meant by his declaration, and we decline to engage in a fishing expedition to suss out its meaning. Nor do we believe that a *DuBay* hearing is appropriate given that this line in the declaration on its face does not implicate a Mil. R. Evid. 606 exception to Mil. R. Evid. 509.

There was discussion on the record regarding a Marine Corps policy or training that said that anyone who had one drink of alcohol could not consent to sexual activity. This was primarily through the voir dire of Capt Jordan. While Capt Jordan did discuss his understanding of a "one drink" policy with the military judge and the parties, and admitted to discussing the definition of "consent" with the other members prior to individual voir dire, there is no evidence that Capt Jordan took any action with the intent of influencing the court-martial. Indeed, the record is unclear as to whether, and to what extent, Capt Jordan even discussed policy issues with the members prior to the military judge recalling them and instructing them on the definition of consent.

What this case therefore lacks is any evidence that someone attempted to use policy considerations to influence the deliberations of the members. The members' passing reference to discussion of Marine Corps policy during deliberation, without more, does not rise to the level of 2ndLt Green's letter in *Dugan*, nor does it even rise to the level of concern the Army court had in *Schloff*. There is no evidence that any member who heard Appellant's case had recently been to a training espousing any policy on sexual assault and consent, nor is there any evidence that any member stated that the panel was obligated

---

[43] Decl of 1stLt Hotel, para. 3

[44] Decl of SSgt Papa, para. 4.

to follow such a policy in their deliberations, or even that the policy was to be considered. Courts have repeatedly stated that if members discuss irrelevant matters during deliberations, courts will not question or permit external inquiry into these matters absent a very narrow set of circumstances. The fact that the members discussed purported Marine Corps policies, without more, simply does not demonstrate a violation of Article 37.

## B. Appellant is not entitled to reversal of his convictions based on UCI.

Having decided that we cannot attach the declarations of 1stLt Hotel and SSgt Papa, we must still determine whether there is some evidence of UCI in the record. We begin by again recognizing that the threshold for an appellant to raise the issue of UCI is very low. However, it still must be more than mere speculation.[45]

Here, the record is completely lacking anything beyond conjecture and speculation regarding the question of UCI. Appellant seeks to place much emphasis on Capt Jordan's revelation during voir dire that he had a discussion with the other members about the definition of consent during a brief recess of less than 15 minutes following the military judge's group voir dire session. However, careful review of Capt Jordan's colloquy with the military judge reveals that, rather than injecting Marine Corps policy into the deliberation room, Capt Jordan was confused about his role as a potential member. No other member recalled this discussion as being directive in nature. (In fact, most members who were questioned did not recall the conversation at all, and those who did found it unremarkable).

When the military judge questioned the members, they all agreed that they would disregard Marine Corps policy and decide Appellant's case solely based on the facts presented and the law as the military judge instructed. After voir dire, the only mention of SAPR training or Marine Corps policy in the record of trial was by Appellant's civilian defense counsel during closing argument, who argued that the SAPR training was wrong in saying that a person who had any alcohol could not consent. Appellant then requested that the military judge advise the members of the definition of a "competent person" from the Military Judges' Benchbook, which the military judge did.[46]

The discussion of SAPR training throughout this trial was unremarkable. The military judge took great pains to ensure that the members understood the law and agreed to follow the law. Each of the members agreed that they

---

[45] *Gilmet*, 83 M.J. at 403.

[46] Dep't of the Army Pam. 27-9, para. 3a-44-2, note 6.

could do so. Even if we were to attach those parts of the declarations of 1stLt Hotel and SSgt Papa to the record relating to policy discussions in the deliberation, we still would not find that there is some evidence of UCI in this case. There is simply no evidence that anyone sought to influence the members of this court through SAPR training, or that the members were so influenced.

### III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[47] The findings and sentence are **AFFIRMED.**

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[47] Articles 59 & 66, UCMJ.