UNITED STATES, Appellee,

v.

Mary Julia E. HAAGENSON, Chief Warrant Officer 2, U.S. Marine Corps, Appellant.

No. 98–0581.

Crim.App. No. 96–1296.

U.S. Court of Appeals for the Armed Forces.

Argued Jan. 14, 1999.

Decided Sept. 28, 1999.

EFFRON, J., delivered the opinion of the Court, in which COX, C.J., and SULLIVAN, J., joined. SULLIVAN, J., filed a concurring opinion. GIERKE, J., filed an opinion concurring in part and dissenting in part, in which CRAWFORD, J., joined.

For Appellant: *Lieutenant Jennifer L. Eichenmuller*, JAGC, USNR (argued).

For Appellee: *Lieutenant Commander John A. Maksym*, JAGC, USNR (argued); *Colonel K.M. Sandkuhler*, USMC, *Commander E.E. Irvin*, JAGC, USN, and *Lieutenant James E. Grimes*, JAGC, USNR (on brief); *Commander D.H. Myers*, JAGC, USN, and *Lieutenant Russell J.E. Verby*, JAGC, USNR.

Judge EFFRON delivered the opinion of the Court.

Contrary to her pleas, appellant was convicted by a general court-martial composed of officer members of one specification of fraternization, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. The court sentenced her to a dismissal, reprimand, and loss of lineal numbers. The convening authority approved the sentence, and the Court of Criminal Appeals affirmed.

On appellant's petition, we granted review of the following issues:

I. WHETHER THE LOWER COURT ERRED WHEN 1) IT AFFIRMED THE FINDINGS AND SENTENCE WHEN THE GOVERNMENT FAILED TO ESTABLISH THAT THE COURT–MARTIAL PANEL WAS SELECTED IN ACCORDANCE WITH ARTICLES 25 AND 37, UCMJ, AND 2) FAILED TO ADDRESS THE ISSUE OF APPARENT UNLAWFUL COMMAND INFLUENCE AT ALL.

II. WHETHER THE LOWER COURT ERRED WHEN IT DETERMINED THAT THERE WAS NO EVIDENCE THAT THE SPECIAL COURT–MARTIAL CONVENING AUTHORITY WITHDREW APPELLANT'S RE-

FERRED CHARGE FROM A SPECIAL COURT–MARTIAL AND RE–REFERRED IT TO AN ARTICLE 32 INVESTIGATION AS A RESULT OF UNLAWFUL COMMAND INFLUENCE.

III. WHETHER THE LOWER COURT ERRED WHEN IT DETERMINED THAT APPELLANT WAS NOT DENIED HER SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHEN HER TRIAL DEFENSE COUNSEL FAILED TO PRESENT ANY WITNESSES IN THE SENTENCING CASE AND WAITED UNTIL DELIBERATIONS ON FINDINGS TO BEGIN GATHERING FAVORABLE DOCUMENTARY SENTENCING EVIDENCE.

For the reasons stated below, we conclude that a factfinding hearing is necessary as a predicate to resolving appellant's assertions of legal error. *See United States v. DuBay,* 17 USCMA 147, 37 CMR 411 (1967).

## I. WITHDRAWAL AND RE–REFERRAL OF CHARGES

Issue II concerns the propriety of the withdrawal of appellant's case from a special court-martial by a subordinate convening authority and its ultimate referral by a superior convening authority to a general court-martial. The convening authority or a superior competent authority may withdraw charges from a court-martial at any time before findings are announced. RCM 604(a), Manual for Courts–Martial, United States (1998 ed.). Subsequently, such charges may be referred to another court-martial, "unless the withdrawal was for an improper reason." RCM 604(b).

The Discussion accompanying RCM 604(b) identifies several permissible reasons for withdrawal prior to arraignment, including receipt of additional charges, absence of

the accused, reconsideration by the convening authority, issues concerning the mental capacity of the accused, and routine duty rotation of court-martial personnel. The Discussion also provides examples of improper reasons for withdrawal, including an intent to interfere with the rights of the accused, an intent to interfere with the impartiality of a court-martial, or an action that does not represent the personal and independent judgment of the authority ordering withdrawal. When charges have been withdrawn and referred to a later court-martial that is more onerous to the accused, the Discussion notes that "the reasons for the withdrawal and later referral should be included in the record of the later court-martial."

In the present case, an initial referral to a special court-martial was withdrawn, and the matter was later referred to the general court-martial that tried appellant.[1] Documents filed at the Court of Criminal Appeals, which are not in dispute between the parties, reflect the following circumstances concerning the earlier referral and withdrawal of charges from a special court-martial.

Colonel Christy, who was the commanding officer of appellant's Battalion and who served as the Special Court–Martial Convening Authority (SPCMCA), signed a charge sheet on May 2, 1995, referring a charge of fraternization to a special court-martial under convening order number 8–95. Colonel Christy had signed convening order number 8–95 on that same date.

On May 3, Colonel Christy received a letter from his military justice officer, who later served as trial counsel in this case. That officer recommended that Colonel Christy reconsider his decision to refer the matter to a special court-martial. On the same day, Colonel Christy withdrew the charge from the special court-martial. In his withdrawal letter, Colonel Christy cited his "reconsidera-

---

1. The earlier referral to a special court-martial, however, was not disclosed at the time of the general court-martial. Trial counsel at the general court-martial represented on the record that the charge had not been referred to any other court. Possibly, this incorrect representation explains why *no reasons for the withdrawal and*

later re-referral were included in the record. *See* Discussion, RCM 604(b). We note that the trial counsel who inaccurately asserted that there had been no prior referral was the same officer who earlier had recommended that the special court-martial convening authority reconsider the initial *referral to a special court-martial.*

tion of the seriousness of the charge, the nature of the offense, and [his] knowledge of evidence that may lead to additional charges after further investigation."

Colonel Christy referred the matter for a pretrial investigation under Article 32, UCMJ, 10 USC § 832. On July 28, the Article 32 investigating officer recommended that the original charge, along with two additional specifications, be referred to a general court-martial. The SPCMCA forwarded the charges to the Base Commander, who referred the charges to a general court-martial on September 1, 1995.

The parties do not agree on the reasons for the withdrawal and subsequent referral. At the court below, appellant submitted an affidavit from Colonel Christy's Executive Officer, Major (Retired) Greene, who described a meeting between Colonel Christy and Colonel Murray, who was the Chief of Staff to the Base Commander around the time of the initial referral and withdrawal.

According to Major Greene, Colonel Murray "wielded a lot of power over the other colonels attached to the Marine Corps Base." Major Greene recalls the meeting as follows:

> I remember being present when Colonel Murray decided that she [appellant] should not be in the Marine Corps anymore. He told Colonel Christy "I want her out of the Marine Corps," or words to that effect. Colonel Murray was very, very angry when he said this. He was yelling. He was, in fact, enraged. His anger was beyond normal, professional irritation. It was as if he had something personal against her.

. . .

> Having originally come from an Infantry background, I would consider myself pretty strict. But as I have stated, the level of hostility towards CWO2 Haagenson had evolved into something irrational and unprofessional, and it did disturb me. I recall Colonel Murray specifically stating, "this is going to be the last nail in her coffin."

The Government submitted an affidavit from Colonel Christy, who stated that he did "not specifically recall" why he had withdrawn the charges, but recalled that he had done so "on advice of counsel." He added that there was "absolutely no command influence associated with [his] decision." In apparent contrast to Major Greene's affidavit, Colonel Christy asserted: "The Chief of Staff never said anything in my presence regarding any personal animosity towards her."

In summary, the defense takes the position that this is a case in which a commander was improperly pressured by the representative of a superior commander to change his discretionary referral decision. The Government contends that Colonel Christy was simply correcting an erroneous referral based upon his unawareness of the limited sentencing powers of a special court-martial over a warrant officer.[2]

The court below, 1998 WL 85579, stated that it found "no support" for appellant's contention in the record or the appellate submissions. Unpub. op. at 8. We do not agree that the documents filed in the court below provides "no support" for the defense claim. Major Greene's sworn affidavit clearly contains such material, in sufficient quantity and quality to raise the issue of unlawful command influence.[3] At the same time, in

---

**2.** With respect to a warrant officer, a special court-martial is not empowered to adjudge either confinement or a punitive separation. *See* RCM 1003(c)(2)(A)(ii) and (iv).

**3.** In the face of the order of events leading to Colonel Christy's withdrawal of the original charge from the special court-martial convened by him, our dissenting colleagues treat this issue as one affecting "the preferral and forwarding process, not the referral." 52 MJ at 38. There is no dispute, however, that Colonel Christy already had referred the original charge to a special court-martial and then withdrew that charge before he forwarded it for investigation under Article 32. The issue before us is his motivation in that withdrawal decision. The dissenters' reliance on "the waiver rule announced by this Court in" *United States v. Hamilton*, 41 MJ 32 (CMA 1994), is misplaced, because that rule applies only to defects in the preferral and forwarding processes of a case. 52 MJ at 38. Indeed, the majority in *Hamilton* squarely recognized that "[u]nlawful command influence at the referral, trial, or review stage is not waived by failure to raise the issue at trial." 41 MJ at 37.

light of Colonel Christy's affidavit, we do not find that the defense materials demonstrate conclusively that the SPCMCA's discretion was improperly influenced.

What we have is an inadequately developed record. In the present case, trial counsel misinformed the court about the existence of a prior referral, and no effort was made to set forth the basis for withdrawal of that referral, as contemplated by the Discussion accompanying RCM 604(b). Had he done so, there would have been an appropriate record, litigation of disputed matters, and findings of fact and conclusions of law by the military judge.

In the absence of a properly developed record, we note that appellant's claim—that the exercise of discretion by the SPCMCA was improperly influenced by a superior—is neither "inadequate on its face" nor "conclusively refuted as to the alleged facts by the files and records of the case." *United States v. Ginn,* 47 MJ 236, 244 (1997). In that posture, the Court of Criminal Appeals was not in a position to resolve the controverted issue without a prior evidentiary hearing. *See id.* at 243 ("Article 66(c) does not authorize a Court of Criminal Appeals to decide disputed questions of fact pertaining to a post-trial claim, solely or in part on the basis of conflicting affidavits submitted by the parties."). Accordingly, we cannot affirm the findings or sentence in this case in its present posture.

## II. PANEL SELECTION AND INEFFECTIVENESS OF COUNSEL

Because the issues involved in Issue I (alleged improprieties in the selection of court members) are closely related to the matters arising under Issue II, particularly with respect to the critical role played by the Base Chief of Staff, Colonel Murray, we also find that it is appropriate for these matters to be resolved in an evidentiary hearing. With respect to Issue III, regarding ineffectiveness of counsel during the sentencing phase, we conclude that the interests of judicial

economy would be served by requiring that this issue also be addressed during the fact-finding proceedings required by our disposition of Issues I and II.

## III. CONCLUSION

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is set aside. The record of trial is returned to the Judge Advocate General of the Navy for factfinding proceedings consistent with this opinion. Thereafter, Articles 66 and 67, UCMJ, 10 USC §§ 866 and 867 (1994), will apply. In the event that an appropriate convening authority concludes that such proceedings are impracticable, the convening authority may set aside the findings and the sentence and return the case to a special court-martial convening authority for appropriate disposition under RCM 401.

SULLIVAN, Judge (concurring):

I applaud my learned brother's opinion remanding this case for further factfinding to more fully develop the record. As I see the present facts of record, including the unrebutted affidavit of Major Greene,[1] they may well support a reasonable conclusion that unlawful command influence occurred. These facts show a change from a special court-martial (where appellant faced no dismissal) to a general court-martial (where appellant faced a dismissal). This change directly followed an incident where the chief of staff (superior officer) yelled to the special court-martial convening authority (the subordinate officer) that he "want[ed appellant] out of the Marine Corps." A reasonable observer of the justice system in the military could view this sequence of events as command influence. *See* Art. 37, UCMJ, 10 USC § 837.

Command influence is an unseen enemy of justice in the military. It is difficult to see and harder to prove. The remand I join today may shed further light on this incident, which may have caused a convening authority to bend his official power to suit the wish

1. The Greene affidavit at this point stands unrebutted. A factfinding hearing may produce more

*or* different facts which may confirm or rebut a finding of command influence.

of a senior officer. We may never know for sure, but at least our Court is seeking the truth—but not on the basis of an incomplete or suspicious record.

GIERKE, Judge, with whom CRAWFORD, Judge, joins (concurring in part and dissenting in part):

I disagree with the majority's decision to order further factfinding on Issue I. The issue was raised at trial and fully litigated. The military judge made extensive findings of fact and conclusions of law. There is no need for more factfinding on this issue.

By remanding the issue, the majority suggests that the military judge's findings of fact or conclusions of law, as well as the decision of the court below, are incorrect. To overturn the military judge's ruling and the decision of the court below, without explanation or citation of authority, undermines the careful analytical framework recently adopted by this Court in *United States v. Upshaw*, 49 MJ 111 (1998), and *United States v. Lewis*, 46 MJ 338 (1997).

The alleged court packing arose from the actions of Colonel (Col) Murray, the chief of staff who was temporarily in command. In my view, the commanding general, Major General (MajGen) Howard, remedied any attempted court packing when he returned to his command and selected a new panel. Two of the officers initially appointed by Col Murray and then reappointed by MajGen Howard, Col Swords and Lieutenant Colonel Stevens, were not challenged for cause as being biased or improperly selected. In my view, any argument that the officers selected by MajGen Howard were tainted by the chief of staff's action rings hollow in the absence of any effort to challenge them.

I also disagree with the majority's decision to remand Issue II. Because the issue was not raised at trial, it was waived unless it rises to the level of plain error. *See United States v. Hamilton*, 41 MJ 32 (CMA 1994).

In my view, any alleged unlawful command influence could have affected only Col Christy's reconsideration of his decision to send the case to a special court-martial. Appellant asserts that Col Christy reconsidered because of unlawful command influence exercised by Col Murray. Col Christy unequivocally asserts that "[t]here was absolutely no command influence associated with [his] decision." He convened an Article 32 investigation of the original charge and specification, as well as three additional specifications. The investigating officer recommended that the allegation of obstructing justice be dismissed but that the remaining charge and specifications be referred to a general court-martial.

Before the Article 32 investigation was completed, Col Christy had been reassigned and replaced. Col March, his successor, forwarded the charges with a recommendation for trial by general court-martial. There is no evidence or allegation that Col March was subjected to unlawful command influence. There is no allegation and no evidence that MajGen Howard's decision to refer the case to a general court-martial was tainted by unlawful command influence.

In my view, Col Christy's decision to withdraw the charges from a special court-martial, prefer additional charges, and order an Article 32 investigation was part of the preferral and forwarding process, not the referral. Accordingly, the waiver rule announced by this Court in *United States v. Hamilton, supra*, applies.

Under a plain-error analysis, appellant has the initial burden of persuading us that an error rises to the level of plain error. *See United States v. Powell*, 49 MJ 460, 464–65 (1998). In my view, appellant has not carried that burden.

I do not believe that a remand is necessary to determine if there was plain error. The issue can be resolved by assuming that Col Murray made the comments attributed to him, and that the comments were made on or about May 1, 1995, the date estimated by Maj Greene.

Col Murray was not in command when the statements allegedly were made. Col Murray was a staff officer, and Col Christy was a senior commander. Thus, Col Murray was not in Col Christy's chain of command. Both Col Murray and Col Christy held the same

military grade. There is nothing in the record showing that Col Murray participated in rating Col Christy's performance. The appellate record shows only that Col Murray and Col Christy had known each other "for many years." *See United States v. Villareal,* 52 MJ 27 (1999) (no unlawful command influence where commander sought out advice of "old shipmate" who was temporarily in command).

The record shows that Col Christy reconsidered his decision after his military justice officer pointed out the contradictions in his proposed disposition. Col Christy had directed referral to a special court-martial but had also checked the box on the preprinted form stating that "confinement is authorized." Maj Niesen, the "military justice officer," pointed out that a special court-martial may not impose confinement on a warrant officer. The record also demonstrates that, after COL Christy reconsidered his original decision, two additional fraternization offenses and an obstruction of justice offense were preferred. The record shows that an independent Article 32 investigating officer investigated all the charges and recommended trial by general court-martial. The charge of obstructing justice was dismissed in accordance with the recommendation of the Article 32 investigating officer. The record shows that Col Christy had departed the command by the time his successor, Col March, forwarded the Article 32 investigation and recommended trial by general court-martial. Finally, the record shows that MajGen Howard, an officer superior to the chief of staff, made the decision to refer the three fraternization offenses to a general court-martial. On this record, I do not find plain error.

With respect to Issue III, I agree that appellant's assertions are sufficient to require explanation by defense counsel. *See United States v. Lewis,* 42 MJ 1, 6 (1995). In my view, however, a factfinding hearing is premature. Until defense counsel files an affidavit addressing appellant's assertions, this Court cannot determine if there are controverted questions of fact requiring a factfinding hearing. *See United States v. Ginn,* 47 MJ 236 (1997).