UNITED STATES, Appellee

v.

Anthony L. REED, Master Sergeant
U.S. Army, Appellant

No. 07-0114

Crim. App. No. 20030921

United States Court of Appeals for the Armed Forces

Argued November 6, 2007

Decided February 12, 2008


EFFRON, C.J., delivered the opinion of the Court, in which
BAKER, ERDMANN, STUCKY, and RYAN, JJ., joined.


Counsel


For Appellant:  Captain Patrick B. Grant (argued); Colonel
Christopher J. O'Brien, Lieutenant Colonel Steven C. Henricks,
and Major Fansu Ku (on brief); Colonel John T. Phelps II.


For Appellee:  Captain Nicole L. Fish (argued); Major Elizabeth
G. Marotta and Captain Larry W. Downend (on brief); Colonel John
W. Miller.


Military Judge:  Edward J. O'Brien


THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

Chief Judge EFFRON delivered the opinion of the Court.

A general court-martial composed of officer and enlisted members convicted Appellant, pursuant to his pleas, of one specification of making a false official statement and one specification of fraud against the United States, in violation of Articles 107 and 132, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 907, 932 (2000).  Contrary to his pleas, he was convicted of a second specification of making a false official statement and three specifications of larceny of military property, in violation of Article 107, UCMJ, and Article 121, UCMJ, 10 U.S.C. § 921 (2000).  The sentence adjudged by the court-martial and approved by the convening authority included a bad-conduct discharge, confinement for one year, and reduction to the lowest enlisted grade.  The United States Army Court of Criminal Appeals affirmed.  United States v. Reed, No. ARMY 20030921 (A. Ct. Crim. App. Oct. 12, 2006) (unpublished).

On Appellant's petition, we granted review of the following issue:

> WHETHER THE MILITARY JUDGE ERRED IN HIS
> FINDINGS OF FACT OR CONCLUSIONS OF LAW
> REGARDING UNLAWFUL COMMAND INFLUENCE.

For the reasons set forth below, we conclude that the military judge did not err in denying Appellant's motion for

appropriate relief with respect to the claim of unlawful command influence.

## I.   BACKGROUND

Appellant contends that the convening authority fostered a command climate that tainted his court-martial with actual unlawful command influence and the appearance of unlawful command influence.  See Article 37, UCMJ, 10 U.S.C. § 837 (2000); Rule for Courts-Martial (R.C.M.) 104; United States v. Stoneman, 57 M.J. 35 (C.A.A.F. 2002).  Section A summarizes the standards applicable to claims of unlawful command influence. Section B describes the litigation of the unlawful command influence allegations in the present case.

### A.   UNLAWFUL COMMAND INFLUENCE

At trial, the burden of raising the issue of unlawful command influence rests with the defense.  United States v. Biagase, 50 M.J. 143, 150 (C.A.A.F. 1999).  The defense must: (1) "show facts which, if true, constitute unlawful command influence" and (2) show "that the alleged unlawful command influence has a logical connection to the court-martial, in terms of its potential to cause unfairness in the proceedings." Id. (citation omitted).  "The threshold for raising the issue at trial is low, but more than mere allegation or speculation." Id. (citation omitted).  The defense is required to present "'some evidence'" of unlawful command influence.  Id. (quoting

United States v. Reed, No. 07-0114/AR

United States v. Ayala, 43 M.J. 296, 300 (C.A.A.F. 1995));
United States v. Simpson, 58 M.J. 368, 373 (C.A.A.F. 2003).

If the defense meets the burden of raising the issue, the burden shifts to the Government.  The Government must:  "(1) disprove 'the predicate facts on which the allegation of unlawful command influence is based'; (2) persuade the military judge 'that the facts do not constitute unlawful command influence'; or (3) prove at trial 'that the unlawful command influence will not affect the proceedings.'"  Simpson, 58 M.J. at 373.  "Depending on the nature of the alleged unlawful command influence and other pertinent circumstances, the Government may demonstrate that unlawful command influence will not affect the proceedings in a particular case as a result of ameliorative actions."  Id.  "Whichever tactic the Government chooses, the quantum of proof is beyond a reasonable doubt." Id. (quoting Stoneman, 57 M.J. at 41).

"In the course of addressing these issues, military judges and appellate courts must consider apparent as well as actual unlawful command influence."  Simpson, 58 M.J. at 374.  "Where the issue of unlawful command influence is litigated on the record, the military judge's findings of fact are reviewed under a clearly-erroneous standard, but the question of command influence flowing from those facts is a question of law that

4

this Court reviews de novo." United States v. Wallace, 39 M.J. 284, 286 (C.M.A. 1994).

## B.  TRIAL PROCEEDINGS

Appellant, while serving in Korea, claimed the Basic Allowance for Housing (BAH) at the rate for married personnel. At the time, he was divorced.  In that status, his BAH entitlement was limited to the lower rate provided to unmarried personnel.  In the present case he was charged with receiving BAH payments that substantially exceeded the payments to which he was entitled.

Appellant filed a pretrial motion for appropriate relief on the basis of unlawful command influence, requesting dismissal of the charges, transfer of the case to another convening authority, and other remedies.  During the proceedings on the motion, the military judge considered documents provided by the parties, testimony from the convening authority, the staff judge advocate, and other members of the command, and the statements of panel members on voir dire.

In support of the allegation that the command climate created unlawful command influence, the defense introduced an e-mail from the convening authority to subordinates.  The e-mail, which was transmitted subsequent to referral of Appellant's case to the court-martial, addressed a variety of command management issues.  An attachment to the e-mail contained a thirty-one-page

slide show, which included the following statement on one of the slides: "Senior NCO and Officer misconduct -- I am absolutely uncompromising about discipline in the leader ranks." The slide noted the following examples: "BAH Fraud, Fraternization, DUI, Curfew violations, Soldier abuse, Sexual misconduct."

The defense also presented testimony that the deputy commander of a subordinate unit told an audience at a "Newcomer's Briefing" that "BAH fraud is an automatic court-martial referral here." The defense further offered the testimony of a staff sergeant, who stated that soldiers in the unit believed that BAH fraud would be handled more harshly than other crimes. In addition, the defense presented evidence that during the period between preferral and referral, the convening authority had communicated with Appellant's rater and senior rater about his evaluation, resulting in inclusion of derogatory information about the pending charges in his annual performance evaluation.

With respect to the e-mail, the Government relied on testimony and documentary evidence showing that the convening authority, upon advice of her staff judge advocate, issued a clarifying e-mail. In the second e-mail, the convening authority set forth the following explanation of the statement that she was "absolutely uncompromising about discipline in the

leader ranks." The second e-mail, which included bold typeface, stated:

> **What that means simply is that I will abide by and enforce Army regulations and the Uniform Code of Military Justice as I swore to in my oath and as I am chartered to do as a commander.** I will not look the other way, nor apply special dispensation on infractions by leaders (as young soldiers sometimes feel is the case). That said, that does NOT mean that each case is handled in the same manner or will have identical outcomes. Absolutely not, as a leader and commander I am also chartered, as are you all, to consider each case on its own merits, taking into account the totality of the alleged offense and the record of performance of the individual concerned as relayed by their written record, their chain of command, as well as their peers, subordinates, family and friends, or any other appropriate witness.

With respect to Appellant's performance evaluation, the Government introduced evidence that Appellant's rater had been under the impression that he could not include evidence of pending charges at the time he prepared the initial draft. When the draft evaluation reached the convening authority for administrative review in her capacity as Appellant's commander, she sought the advice of her staff judge advocate as to the propriety of referencing pending charges in such an evaluation. He advised her that upon completion of the pretrial investigation under Article 32, UCMJ, 10 U.S.C. § 832 (2000), it was appropriate under applicable regulations to reference

pending charges in the performance evaluation.  See Dep't of the Army, Reg. 623-205, Personnel Evaluation, Noncommissioned Officer Evaluation Reporting System paras. 2-13, 3-17 (May 15, 2002).  She conveyed that advice to the rater and senior rater, noting that they were unconstrained as to the content of their evaluation, but that she would not concur in a rating that she believed to be incorrect.  The senior rater and the rater reexamined the regulation and the draft evaluation.  After concluding that the regulation permitted reference to derogatory information in the evaluation following completion of the Article 32 investigation, they revised the evaluation.  As revised, the evaluation stated that Appellant did not meet the Army standard for integrity.  In addition, both the rater and the senior rater added negative comments about Appellant concerning BAH fraud.

The military judge permitted extensive voir dire of the panel members with respect to the issue of unlawful command influence.  Four panel members stated that they had received the e-mail.  One was removed upon a challenge for cause.  A second was removed upon a peremptory challenge by the defense.  During voir dire, this member recalled that the e-mail addressed the need to make sure that "things that you've put in place or fixed are still fixed."  He did not recall any specific focus on military justice, but recalled mention of BAH fraud.  In terms

of the command's approach, he stated that there was a philosophy along the lines that if "something is not right you don't do it."

With respect to the other two members, one said that he remembered an e-mail that covered the need for leaders to reinforce proper behavior. He recalled that "in that e-mail it specifically stated somewhere along the lines that it amazes me that, continue [sic] to see BAH fraud, something along that line." The member added that he did not recall an attachment to the e-mail. He responded in the negative to the question as to whether there was a "particular view" held by the command structure with respect to BAH matters. The other remaining member stated that he viewed the e-mail as focusing on standards of importance to the command, including BAH fraud. He believed that BAH cases were processed depending on the circumstances and he was unaware of any pressure to handle BAH cases in a particular manner.

Officers in Appellant's chain of command testified that they exercised independent judgment when they decided to prefer and forward charges of BAH fraud to the convening authority. The Article 32 investigating officer said he was unaware of any command policy directing disposition of BAH fraud and that he believed a general court-martial was appropriate for the allegations.

The military judge made detailed findings of fact and conclusions of law. In his findings of fact, he found that the actions of the convening authority with respect to Appellant's evaluation, which comported with applicable administrative procedures, did not have an improper impact on the processing of the charges against Appellant. The military judge also found that none of the officers involved in preferring, investigating, or forwarding the charges had been pressured into making a particular recommendation, and that all had made a recommendation free from influence. In addition, the military judge found that the convening authority was not inflexible and that she did not have a particular disposition towards punishing certain crimes. All defense requested witnesses were willing to testify, and there was no evidence that any witnesses were unwilling to testify for Appellant. The military judge concluded that the panel members were not tainted by unlawful command influence, and that the proceedings were not otherwise tainted by unlawful command influence.

## II. DISCUSSION

On appeal, Appellant focuses primarily on apparent command influence: "The spectre of unlawful command influence . . . so deeply permeated [A]ppellant's court-martial, creating the appearance of the command influencing the proceeding, that it

10

imposed an intolerable strain on the public perception of the military justice system." During oral argument, counsel for Appellant also suggested that because the commander's e-mail was received by two members who participated in the panel's deliberations, the case was infected by actual unlawful command influence.

For purposes of this appeal, we shall assume, without deciding, that the evidence at trial was sufficient to raise the issue of unlawful command influence. In that context, the Government was required to demonstrate beyond a reasonable doubt that the fairness of the proceedings was not compromised by any unlawful command influence.

The two panel members who received the convening authority's e-mail were fully questioned during voir dire with respect to whether it had an adverse impact on their ability to render an impartial judgment. See Stoneman, 57 M.J. at 41. The members' answers demonstrated that they had little specific recollection of the content of the e-mail, and that they did not perceive that there was a command policy governing disposition of BAH fraud cases. No panel member testified to feeling any pressure as a result of having received the email and there is no evidence that they believed the command expected a certain result from the court-martial. We conclude that the Government

11

met its burden of demonstrating beyond a reasonable doubt that the case was not infected by actual unlawful command influence.

With respect to Appellant's contention that the case was tainted by the appearance of unlawful command influence, our evaluation is highly case-specific. See Simpson, 58 M.J. at 376-77. In addition to considering the specific words at issue in the context of the charged offenses, we also take into account factors such as the means and scope of dissemination, remedial action within the command in general and with respect to potential court members in particular, the degree to which the record itself demonstrates that the defense has had a full opportunity to explore the issue, whether the Government has been forthcoming in its response, and whether the military judge has taken any necessary corrective action. Id. at 376.

The record in the present case reflects that the convening authority, upon advice from her staff judge advocate, took prompt remedial action, in the form of a corrective e-mail when informed of possible adverse implications of the initial e-mail. The e-mail itself was a lengthy document, in which only a small portion contained matters of concern, and the record indicates that few members of the command had a specific recollection of the details of the e-mail.

Likewise, the record contains only isolated accounts of a negative command climate adverse to the defense, none of which

impacted witnesses or panel members.  The record does not reflect that any of the panel members attended the "Newcomer's Briefing" or were otherwise informed of the "automatic court-martial referral" comment from that briefing.  The discussions about Appellant's performance evaluation reflect a difference of opinion over the permissible content of a noncommissioned officer's efficiency report.  The record does not establish that the convening authority pressured the rater or senior rater to change their evaluations, nor does the record reflect that any panel member was aware of these discussions.

In assessing the issue of unlawful command influence, we take into account the full and open litigation of the issue and the evidence adduced at trial.  United States v. Campos, 42 M.J. 253, 261 (C.A.A.F. 1995).  The defense had a full opportunity to present witnesses and documents on the issue of unlawful command influence.  The Government presented extensive testimony from the convening authority, the staff judge advocate, and members of the chain of command about the processing of charges against Appellant, and the defense had a full opportunity to cross-examine these witnesses.  The military judge provided counsel with an opportunity for exploration of the pertinent issues during voir dire of panel members.  As noted above, the members who sat on the panel did not have a specific recollection of the negative command climate information presented by the defense.

United States v. Reed, No. 07-0114/AR

Under the circumstances of this case, we conclude that the Government has met its burden of demonstrating beyond a reasonable doubt that the fairness of the court-martial proceedings was not compromised by unlawful command influence. See Simpson, 58 M.J. at 376-77.

## III.  DECISION

The decision of the United States Army Court of Criminal Appeals is affirmed.