**UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS**

**UNITED STATES**

**v.**

**Airman First Class SHANE M. DUNDON**
**United States Air Force**

**ACM 38436**

**27 February 2015**

Sentence adjudged 2 July 2013 by GCM convened at Malmstrom Air Force Base, Montana. Military Judge: Grant L. Kratz.

Approved Sentence: Dishonorable discharge, confinement for 36 months, forfeiture of all pay and allowances, and reduction to E-1.

Appellate Counsel for the Appellant: Captain Jeffrey A. Davis.

Appellate Counsel for the United States: Lieutenant Colonel C. Taylor Smith; Captain Richard J. Schrider; and Gerald R. Bruce, Esquire.

Before

HECKER, MITCHELL, and WEBER
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under Air Force Rule of Practice and Procedure 18.4.

HECKER, Senior Judge:

Consistent with his pleas, the appellant was convicted at a general court-martial of sexual assault and sodomy with a child over the age of 12 but under the age of 16, in violation of Articles 120b and 125, UCMJ, 10 U.S.C. §§ 920b, 925. Officer and enlisted members sentenced him to a dishonorable discharge, confinement for 36 months, forfeiture of all pay and allowances and reduction to E-1. The convening authority approved the sentence as adjudged.

On appeal, the appellant argues, pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), (1) his waiver of an unlawful command influence motion was unknowing and involuntary, and (2) the military judge abused his discretion when he did not allow the appellant to introduce evidence of sex offender registration during sentencing. We disagree and affirm.[1]

*Background*

While home on leave, the 19 year-old appellant met in person with a 14 year-old girl after previously communicating with her through a social networking website. During these communications, the child told the appellant her true age, and this fact was confirmed for the appellant by a mutual friend. Nonetheless, the appellant asked to "hang out" with the child when he was home on leave, and the two agreed to tell her parents the appellant was a senior in high school.

After meeting her parents, the appellant left with the child in his father's vehicle. He asked her if she knew a place they could stop and "park," and the couple ended up in a parking lot several miles from her home. Once there, the appellant removed their clothing, digitally penetrated her and engaged in sexual intercourse twice, as well as oral and anal sodomy. After the child told her parents about this incident, the appellant was interviewed by military law enforcement and admitted to, and later pled guilty to, the sexual conduct.

*Voir Dire and Challenges to Panel*

The venire panel for the appellant's case included twelve prospective members. During group voir dire, trial defense counsel asked the panel a variety of questions about their knowledge of certain sexual assault cases that had occurred on base or had been reported in the media and whether they had heard about the views of military or civilian leadership on the handling of these types of cases. The defense also explored the panel's knowledge of a sexual assault prevention all-call briefing that occurred the week prior to trial. Nine of the venire members had attended that briefing, where the wing commander and staff judge advocate spoke about sexual assault in the military environment.[2] Defense counsel asked further questions about the all-call during individual voir dire, as discussed in pertinent part below.

---

[1] Although our resolution of this case ultimately favors the Government, consideration of the case for certification by the Judge Advocate General under Article 67(a)(2) would appear to be particularly appropriate in view of (1) the potential inconsistency between the Court of Appeals' precedents on waiver, adjudicative unlawful command influence, and member challenges; and (2) the importance of clear guidance to military courts and the service members who appear before them. *See United States v. Fagan*, 59 M.J. 238, 241 (C.A.A.F. 2004) (noting a service court can recommend the Judge Advocate General send the case to the Court of Appeals); *see also United States v. Schoof*, 37 M.J. 96, 99 (C.M.A. 1993) (noting that an appellant can request that the Judge Advocate General send his case to the Court of Appeals for automatic review).

[2] Four of these nine venire members were eventually removed for cause for reasons unrelated to the all-call briefing. A fifth was removed following a peremptory challenge by the defense, as discussed further in this opinion.

Lieutenant Colonel (Lt Col) MG recalled the wing commander saying the Air Force has "zero-tolerance for sexual assaults," 99% of the base population were "good people" but "a very small amount" are "wolves . . . clothed in sheep coats," which Lt Col MG took to be a reference to sexual predators. Lt Col MG believed these references related to adult-on-adult sexual offenses. He also recalled the wing commander saying if one of his daughters was sexually assaulted, he would "kill" the perpetrator. Lt Col MG also recalled the staff judge advocate saying sex offenders are excluded from society and live underneath overpasses. Lt Col MG stated he heard nothing at the briefing that led him to believe he needed to act in a particular way at the court-martial, and that he would "absolutely" make his own decision following the military judge's instructions, regardless of the wing commander's personal feelings about how he would react if his own child was harmed.

Another member, Staff Sergeant [SSgt] JO, thought the wing commander's briefing had referenced the wing members' duty as Airmen to "eliminate [predators] if we could" because they have "no place in the Air Force. They're not supposed to be here and it's our duty to pinpoint [sic] them out so that way they can get out." He recalled the commander saying that 99% of the people are doing their best and 1% are not doing what they should be and are like wolves in sheep's clothing that pollute the population. He also recalled the commander saying that if anyone sexually assaulted his daughter, he would want to react outside "the confines of the legal system" but would allow the justice system to handle the issue. SSgt JO also said he was aware of the Air Force Chief of Staff's "policy of eliminating [sexual assault] in all the ranks." In response to a question from trial defense counsel, SSgt JO indicated he "could not consider not assessing a punitive discharge" based on the offenses but then agreed he *could* consider that option as one of a range of punishments if so instructed by the military judge. SSgt JO also indicated he did not feel pressured by the "all-call" briefing or ordered to behave in a certain way while serving as a member on the court-martial panel and would follow his own judgment in the case.

After individual voir dire was completed, trial defense counsel indicated he was raising both an unlawful command influence motion and a challenge for cause against these two panel members, based on the comments made by the wing commander at the all-call briefing. The military judge expressed frustration that the defense was belatedly raising the unlawful command influence issue when trial defense counsel had "enough information to have a basis for [it]" prior to trial. Trial defense counsel indicated he had not raised the issue previously because he did not know if the members had attended the all-call or heard the comments. Now that voir dire was completed, trial defense counsel believed these two panel members were affected by unlawful command influence.[3] Noting that an unlawful command influence motion is not directed at panel members but

---

[3] At this point, five of the remaining venire members had attended the all-call briefing. The defense did not challenge three of those members.

at the "heart of the case," the military judge expressed concern that the defense had not raised the motion in order to keep his pretrial agreement.[4]

The military judge told the parties he was going to set aside the unlawful command influence issue and first decide the member challenge issue. He then denied both implied bias challenges. The appellant used his peremptory challenge to remove SSgt JO from the panel. After the Government used its peremptory challenge against a member who had not attended the all-call, six members remained on the panel, four of whom (including Lt Col MG) had attended the all call briefing.

The parties then discussed the possibility of a defense motion for unlawful command influence based on the discussion at the all call briefing because Lt Col MG remained on the panel. After an overnight recess, trial defense counsel said the defense would not be raising such a motion as the defense did not believe there was sufficient information to support it. Although trial defense counsel acknowledged the case law was unclear about whether an accused could waive "adjudicative unlawful command influence," he indicated he believed the accused could do so in this case even if there was unlawful command influence and that the appellant wanted to in order to preserve his beneficial pretrial agreement.

The Government did not take a position on whether adjudicative unlawful command influence could be waived. After advising the military judge that no recording of the all-call briefing had been made, trial counsel argued the information in the case so far was insufficient to raise an issue of adjudicative unlawful command influence because there was no evidence that the commander's comments even hinted at what the audience should do as panel members on a case.

In a discussion with the military judge, the appellant agreed with his counsel's assessment that the facts brought out in his case so far did not raise the issue of unlawful command influence. After the military judge explained the potential relief the appellant could receive if such improper influence was found, the appellant agreed he wanted to "affirmatively waive any adjudicatory UCI [unlawful command influence] that may have been brought up by the facts in this case," in order to retain the benefit of his pretrial agreement. He also signed a document which stated that the pretrial agreement precludes the military judge or any appellate court "from having the opportunity to determine if [he is] entitled to any relief" on his unlawful command influence issue and that he was agreeing to this provision in order to get the benefit of the pretrial agreement.

---

[4] Prior to trial, the appellant entered into a pretrial agreement which limited his confinement to 42 months. In that agreement, the appellant agreed to waive all waivable motions. When this provision was discussed during the appellant's guilty plea inquiry, defense counsel stated it had not caused the defense to abandon any motions and the appellant also indicated he understood the meaning of the provision and agreed to its requirement. Following voir dire, defense counsel clarified that he had informed trial counsel he was not sure if an unlawful command influence motion would be filed but had also discussed waiving that motion as part of the pretrial agreement.

The military judge found the appellant knowingly and intelligently waived any issue of adjudicative unlawful command influence. The appellant now argues that his waiver was not knowing and voluntary because this type of unlawful command influence cannot be waived, or, in the alternative, that the military judge abused his discretion in accepting his waiver without sufficiently developing the record on the issue of unlawful command influence.

*Waiver of Unlawful Command Influence*

When an appellant has intentionally relinquished or abandoned a known right at trial, "it is extinguished and may not be raised on appeal." *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009) (citing *United States v. Harcrow*, 66 M.J. 154, 156 n.1 (C.A.A.F. 2008)). In *United States v. Mezzanatto*, 513 U.S. 196, 201 (1995), the United States Supreme Court agreed that a criminal defendant "may knowingly and voluntarily waive many of the most fundamental protections afforded by the Constitution."

The Government argues that under the "waive all waivable motions" pretrial agreement provision and through his discussion with the military judge, the appellant has waived his right to complain about this issue on appeal. To date, our superior court has not applied waiver to issues of unlawful command influence arising during the adjudicative process, as it has for those arising during the accusatorial process.[5] Unlike the military judge here, our sister service courts have declined to apply waiver

---

[5] *See United States v. Riesbeck*, __ M.J. __ No. 15-0074/CG, slip op. at 1 (C.A.A.F. 11 December 2014) (concluding the issue of improper member selection was not waived and noting "improper member selection can constitute unlawful command influence, an issue that cannot be waived"); *United States v. Hutchins*, 72 M.J. 294, 312 (C.A.A.F. 2013) (Baker, CJ, dissenting) (stating "the [unlawful command influence analytical] framework is intended to promote the adjudication of the facts rather than a reliance on concepts of deference and waiver"); *United States v. Douglas*, 68 M.J. 349, 356 n.7 (C.A.A.F. 2010) (citing *United States v. Johnston*, 39 M.J. 242, 244 (C.M.A. 1994)) ("We note that this Court has not applied the doctrine of waiver where unlawful command influence is at issue."); *United States v. Reed*, 65 M.J. 487, 491 (C.A.A.F. 2008) ("In assessing the issue of unlawful command influence, we take into account the full and open litigation of the issue and the evidence adduced at trial."); *United States v. Baldwin*, 54 M.J. 308, 310 n.2 (C.A.A.F. 2001) ("We have never held that an issue of unlawful command influence arising during trial may be waived by a failure to object or call the matter to the trial judge's attention."); *United States v. Haagenson*, 52 M.J. 34, 37 (C.A.A.F. 1999); *United States v. Hamilton*, 41 M.J. 32, 37 (C.M.A. 1994) ("Unlawful command influence at the referral, trial, or review stage is not waived by failure to raise the issue at trial."); *United States v. Blaylock*, 15 M.J. 190, 193 (C.M.A. 1983) ("In view of the policy clearly stated in Article 37, UCMJ, 10 U.S.C. § 837, we have never allowed doctrines of waiver to prevent our considering claims of improper command control. Indeed, to invoke waiver would be especially dangerous, since a commander willing to violate statutory prohibitions against command influence might not hesitate to use his powers to dissuade trial defense counsel from even raising the issue.") (citations omitted). *Cf. United States v. Richter*, 51 M.J. 213, 224 (C.A.A.F. 1999) (finding allegation of unlawful command influence in preferral was waived by failure to raise the issue at trial); *United States v. Weasler*, 43 M.J. 15, 19 (C.A.A.F. 1995) ("If an accused waives an allegation of unlawful command influence in the preferral of charges by failure to raise a timely objection at trial, then surely an accused, following a timely objection, should be permitted to initiate an affirmative and knowing waiver of an allegation of unlawful command influence in the preferral of charges in order to secure the benefits of a favorable pretrial agreement. To hold otherwise would deprive appellant of the benefit of his bargain.").

under similar circumstances. *See United States v. Valmont*, 73 M.J. 923, 933 (Army Ct. Crim. App. 2014) (electing not to apply waiver of adjudicative unlawful command influence issue even though the appellant and trial defense team affirmatively decided not to pursue issue of defense witnesses being subjected to reprisal); *United States v. Lopez*, NMCCA 201200457, unpub. op at 11 (N.M. Ct. Crim. App. 30 July 2013) ("Because of the insidious nature of [unlawful command influence] and its potential devastating impact on the very integrity of the court-martial process, we decline to reflexively apply waiver even here where the civilian defense counsel specifically declined to raise a[n] unlawful command influence motion" regarding the Commandant of the Marine Corps' "Heritage Brief"); *see also* Department of the Army Pamphlet 27-9, *Military Judges' Benchbook* ¶ 2-7-10 note 2 (1 January 2010) ("The accused . . . may offer to waive an unlawful command influence motion if the unlawful command influence involves issues occurring only during the accusatory phase of the court-martial . . . as opposed to the adjudicative process . . . .").

We recognize the military judge discussed this issue with the appellant who affirmatively stated he agreed with his counsel about the lack of viability of the potential motion and that he was willing to waive any such issue that did exist in his case.[6] However, given our superior court's precedent, we find the appellant could not waive the issue of whether his venire panel was subjected to unlawful command influence.

*Relationship Between Unlawful Command Influence and Implied Bias*

Article 37, UCMJ, 10 U.S.C. § 837, states "No person subject to [the UCMJ] may attempt to coerce or, by any unauthorized means, influence the action of a court-martial . . . or any member thereof . . . ." "Command influence is the mortal enemy of military justice." *United States v. Thomas*, 22 M.J. 388, 393 (C.M.A. 1986).

We review allegations of unlawful command influence de novo. *United States v. Salyer*, 72 M.J. 415, 423 (C.A.A.F. 2013) (citing *United States v. Harvey*, 64 M.J. 13, 19 (C.A.A.F. 2006)). Once actual or apparent command influence is properly placed at issue, "no reviewing court may properly affirm findings and sentence unless it is persuaded beyond a reasonable doubt that the findings and sentence have not been affected by the command influence." *Thomas*, 22 M.J. at 394.

The defense has the initial burden of raising the issue of unlawful command influence by presenting "some evidence" of unlawful command influence, meaning the defense must "show facts which, if true, constitute unlawful command influence." *United States v. Biagase*, 50 M.J. 143, 150 (C.A.A.F. 1999); *Salyer*, 72 M.J. at 423. This "burden of showing potential unlawful command influence is low, but is more than mere allegation or speculation." *Salyer*, 72 M.J. at 423 (citing *United States v. Stoneman*, 57 M.J. 35, 41 (C.A.A.F. 2002). If raised on appeal, he must show (1) facts which, if

---

[6] The discussion of this issue at trial appears to focus on actual unlawful command influence.

true, constitute unlawful command influence; (2) the proceedings were unfair; and (3) the unlawful command influence was the cause of that unfairness. *Salyer*, 72 M.J. at 423; *Biagase*, 50 M.J. at 150. The burden then shifts to the Government, who must prove beyond a reasonable doubt: (1) the predicate facts do not exist; or (2) the facts do not constitute unlawful command influence; or (3) the unlawful command influence did not affect the findings and sentence. *Biagase*, 50 M.J. at 151.

We review not only for actual unlawful command influence, but also for the appearance of unlawful command influence. *United States v. Lewis,* 63 M.J. 405, 415 (C.A.A.F. 2006). The mere appearance of unlawful command influence may be "as devastating to the military justice system as the actual manipulation of any given trial." *United States v. Allen*, 33 M.J. 209, 212 (C.M.A. 1991). The appearance of unlawful command influence exists "where an objective, disinterested observer, fully informed of all the facts and circumstances, would harbor a significant doubt about the fairness of the proceeding." *Lewis*, 63 M.J. at 415.

This test is similar to the one used to evaluate implied bias on the part of court members. Both tests focus on "the perception of fairness in the military justice system as viewed through the eyes of a reasonable member of the public." *Id.* In fact, "[c]hallenges based on implied bias and the liberal grant mandate address historic concerns about the real and perceived potential for command influence on members' deliberations. . . . The mandate recognizes that the trial judiciary has the primary responsibility of preventing both the reality and the appearance of bias involving potential court members." *United States v. Clay*, 64 M.J. 274, 276–77 (C.A.A.F. 2007).

However, a military judge's finding of no implied bias does not answer the question of whether the accused would have prevailed under the more favorable burden shifting regime used to evaluate unlawful command influence.[7] *Stoneman*, 57 M.J. at 41–42; *Harvey*, 64 M.J. at 21 (holding when the defense has presented some evidence of unlawful command influence, the military judge should call on the Government to meet its burden).[8]

Here, as in *Stoneman* and *Harvey*, the military judge focused solely on the implied bias challenge. He did not make any findings or conclusions regarding the burden-shifting framework, in part because the appellant agreed he could affirmatively waive this issue. In some circumstances, this may result in an inadequate factual basis as to the precise nature and extent of any unlawful command influence. *Stoneman*,

---

[7] A judge on our sister court recently noted, "our superior court has not definitively addressed the interplay between member disqualification for implied bias and curing the taint stemming from apparent [unlawful command influence] on a prospective venire." *United States v. Howell*, NMCCA 201200264, unpub. op at 44 (N.M. Ct. Crim. App. 22 May 2014) (concurring opinion).

[8] In *United States v. Youngblood*, 47 M.J. 338 (C.A.A.F. 1997), our superior court evaluated a commander's comments solely under the construct of implied bias and did not discuss unlawful command influence, to the consternation of two judges who believed unlawful command influence was the real issue in the case.

57 M.J. at 42–43; *Harvey*, 64 M.J. at 22; *United States v. Haagenson*, 52 M.J. 34, 37 (C.A.A.F. 1999); *Baldwin*, 54 M.J. at 311; *United States v. Dugan*, 58 M.J. 253, 258–59 (C.A.A.F. 2003). We do not have that problem here as we find the record is adequately developed for us to conduct our review of both the implied bias rulings and the possible unlawful command influence in this case.

*Implied Bias Challenge*

A military accused enjoys the right to an impartial and unbiased panel. *United States v. Mack*, 41 M.J. 51, 54 (C.M.A. 1994). This right stems from "the Constitution, federal statutes, regulations and directives, and case law." *United States v. Terry*, 64 M.J. 295, 301 (C.A.A.F. 2007). Rule for Courts-Martial (R.C.M.) 912(f)(1)(N), requires that a member be excused whenever he should not sit "in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality." This provision encompasses challenges based upon actual and implied bias. *United States v. Elfayoumi*, 66 M.J. 354, 356 (C.A.A.F. 2008). The latter exists when, "regardless of an individual member's disclaimer of bias, most people in the same position would be prejudiced." *United States v. Briggs*, 64 M.J. 285, 286 (C.A.A.F. 2007) (quoting *United States v. Napolitano*, 53 M.J. 162, 167 (C.A.A.F. 2000))

The test for deciding an implied bias challenge is objective, "viewed through the eyes of the public, focusing on the appearance of fairness" and is evaluated based on the totality of the factual circumstances. *United States v. Bagstad*, 68 M.J. 460, 462 (C.A.A.F. 2010). "The hypothetical 'public'" in this analysis "is assumed to be familiar with the military justice system." *Id.* In conducting this objective test, we determine "whether the risk that the public will perceive that the accused received something less than a court of fair, impartial members is too high." *United States v. Townsend*, 65 M.J. 460, 463 (C.A.A.F. 2008). "The focus of this rule is on the perception or appearance of fairness of the military justice system[,]" *United States v. Dale*, 42 M.J. 384, 386 (C.A.A.F. 1995), since "[t]he rule 'reflects the President's concern with avoiding even the perception of bias, predisposition, or partiality.'" *United States v. Minyard*, 46 M.J. 229, 231 (C.A.A.F. 1997) (quoting *United States v. Lake*, 36 M.J. 317, 323 (C.M.A. 1993).

Because the test is objective, we give less deference to the trial judge when reviewing a military judge's ruling on a challenge for cause based on implied bias. *United States v. Napolitano*, 53 M.J. 162, 166 (C.A.A.F. 2000). The standard of review is "less deferential than abuse of discretion, but more deferential than de novo review." *United States v. Moreno*, 63 M.J. 129, 134 (C.A.A.F. 2006). We must also be mindful of the "liberal grant" mandate, which recognizes the unique nature of court-martial panels and the accused's single peremptory challenge. *Id.*; *United States v. White*, 36 M.J. 284, 287 (C.M.A. 1993); *United States v. James*, 61 M.J. 132, 139 (C.A.A.F. 2005). Where a military judge recognizes his duty to liberally grant defense

challenges for cause and puts his reasoning on the record, his exercise of discretion will rarely be reversed. *Clay*, 64 M.J. at 277. Military judges need not express "record dissertations" concerning a decision on implied bias but must provide "a clear signal that the military judge applied the right law." *Clay*, 64 M.J. at 277 (quoting *United States v. Downing*, 56 M.J. 419, 422 (C.A.A.F. 2002)) (internal quotation marks omitted). Where a military judge determines not to grant the challenge in a close case, "additional analysis on the record will better inform appellate courts in their review and determination as to whether there was an abuse of discretion." *United States v. Peters*, __ M.J. __ No. 14-0289/AF, slip op. at 7 (C.A.A.F. 12 February 2015).

Here, the military judge denied the defense's challenge to Lt Col MG.[9] Several days before he sentenced the appellant for sexual contact with a minor, Lt Col MG heard the wing commander describe the Air Force's "zero tolerance for sexual assaults," express his belief that a small number of people on base were "wolves . . . clothed in sheep coats," and stating he would "kill" anyone who sexually assaulted one of his daughters. Lt Col MG also told the parties he did not believe he had to act in a certain way at the appellant's court-martial and that he would make his own decision in the case while following the military judge's instructions. After hearing this and observing Lt Col MG during voir dire, the military judge found Lt Col MG did not have an inflexible attitude in sentencing and had not been influenced by the wing commander's comments. After acknowledging the liberal grant mandate, the military judge denied the implied bias challenge as "any reasonable individual looking in on these proceedings would not feel that [Lt Col MG's] participation in the deliberation room would create an appearance of unfairness." As in *Peters*, the military judge here could have provided additional analysis to better inform our review; however, even if we granted his decision less deference, we still have sufficient information to conclude Lt Col MG's presence on the panel did not constitute implied bias.

The military judge found Lt Col MG to be sincere and credible when he stated he would not be affected by the all-call briefing, and we agree no actual bias exists. Also, applying the standard of review discussed above and being cognizant of case law finding implied bias when most people in the same position would be prejudiced, we hold that the military judge did not err in denying the challenge for cause as to Lt Col MG. Although Lt Col MG did hear the commander say he would "kill" anyone who sexually assaulted his own daughter, we do not find that his regrettable choice of words had an adverse impact on Lt Col MG's ability to render an impartial decision on the appellant's sentence.

Considering the totality of the circumstances while viewing the situation through the eyes of the public and focusing on the appearance of fairness in the military justice system, we find there is not too high a risk that the public will perceive that the appellant

---

[9] Because the defense exercised its peremptory challenge on the other member (Staff Sergeant JO), there is no appellate review of the military judge's denial of that challenge for cause. Rule for Courts-Martial 921(f)(4).

received less than a court composed of fair and impartial members when Lt Col MG sat on the panel. Furthermore, we find this is not a case where Lt Col MG would be affected by subtle or imperceptible pressure, and it is not a circumstance where most people in the same situation as Lt Col MG would be prejudiced. *See United States v. Youngblood*, 47 M.J. 338, 342 (C.A.A.F. 1997); *Dugan*, 58 M.J. at 258–59; *Daulton*, 45 M.J. at 217. Allowing him to sit as a panel member is not "asking too much of . . . him [or] the system." *Dale*, 42 M.J. at 386.

*Unlawful Command Influence*

The use of command meetings to purposefully influence panel members in determining a court-martial sentence constitutes unlawful command influence. Article 37, UCMJ; *Dugan*, 58 M.J. at 258. Here, there was no evidence presented that the wing commander intended to influence panel members when he conducted the all-call briefing and we do not infer that he had such an intent after considering the responses of all the venire panel members who were present at that briefing.

Regardless of the commander's intent, however, his comments may constitute unlawful command influence depending on "the confluence of subject [matter] and timing, particularly as they affect the minds—however subtly or imperceptibly—of the triers of fact." *Dugan*, 58 M.J. at 258, citing to *United States v. Brice*, 19 M.J. 170, 172 n. 3 (C.M.A. 1985); *Baldwin*, 54 M.J. at 310. It is sometimes difficult for a subordinate to ascertain the actual influence his superior has on him. *Youngblood*, 47 M.J. at 341. In some circumstances, an inference of unlawful command influence can be made based on the timing of such a meeting when coupled with its content. *Dugan*, 58 M.J. at 259.

Even when panel members have been exposed to comments suggestive of unlawful command influence construct, an accused can receive a fair trial where there is (1) full disclosure of the matter on the record; (2) an assessment of the members' ability to render an impartial judgment; and (3) proper instruction on the members' judicial duty. *United States v. Martinez*, 42 M.J. 327, 332 (C.A.A.F. 1995). The parties and the military judge have the burden to "'fully question the court members during voir dire' to determine whether a commander's comments 'had an adverse impact on the member's ability to render an impartial judgment.'" *Stoneman*, 57 M.J. at 41 (quoting *Thomas*, 22 M.J. at 396); *United States v. Reed*, 65 M.J. 487, 491 (C.A.A.F. 2008).

Here, the venire panel was fully questioned regarding their perceptions and recollections about the wing commander's all-call briefing. All of the panel members who attended the briefing, including Lt Col MG, said their decisions would not be influenced by the commander's statements and agreed to only consider evidence admitted in the case when fashioning a sentence for the appellant. *United States v. Reynolds*, 40 M.J. 198, 202 (C.M.A. 1994). Their responses during voir dire did not indicate they felt any pressure based on their attendance at the briefing, nor that they believed the

commander expected them to act in a particular way at a court-martial. *See Reed*, 65 M.J. at 491. Although Lt Col MG did hear the commander say he would "kill" anyone who sexually assaulted his own daughter, as noted above, we do not find that his regrettable choice of words had an adverse impact on Lt Col MG's ability to render an impartial decision on the appellant's sentence.

Therefore, even if the remarks of the wing commander constituted "some evidence" of unlawful command influence, we conclude based on our de novo review of the record that the Government has met its burden of demonstrating beyond a reasonable doubt that those remarks did not affect the sentence received by the appellant. Furthermore, we find that an objective, disinterested, reasonable member of the public, fully informed of all the facts and circumstances, would not harbor a significant doubt about the fairness of the appellant's court-martial proceeding. *See Lewis*, 63 M.J. at 415.

### Sex Offender Registration

During his unsworn statement, the appellant asked the panel for leniency as he was going to start his new life after confinement with the labels of federal convict and sex offender. Without defense objection, the military judge instructed the panel that the appellant's unsworn statement contained his personal views on sex offender registration and the panel must give it appropriate consideration. He also instructed that their deliberations should focus on an appropriate sentence for the offenses and the fairness of that sentence must not depend on the actions others may take.

The military judge required the defense to remove a reference to sex offender registration from the letter submitted by the appellant's mother at trial. The appellant contends this was an abuse of the military judge's discretion as sex offender registration is not a collateral consequence of the appellant's conviction. Since the filing of the appellant's brief in this case, our superior court has issued an opinion which requires rejection of the appellant's argument.

In *United States v. Talkington*, 73 M.J. 212, 213 (C.A.A.F. 2014), our superior court held that sex offender registration is a collateral consequence of the conviction alone and has no causal relationship to the sentence imposed for the offense. Thus, while an accused is permitted to raise this collateral consequence in his unsworn statement, "the military judge may instruct the members essentially to disregard the collateral consequence" as they deliberate on an appropriate sentence for an accused. *Id.; see also Barrier*, 61 M.J. at 485–86; *United States v. Tschip*, 58 M.J. 275, 277 (C.A.A.F. 2003). In light of this holding, the military judge's decision to require the defense to remove the reference to sex offender registration from the mother's letter and his instruction to the panel were not an abuse of discretion and were in accordance with the holding in *Talkington*.

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the approved findings and sentence are **AFFIRMED**.

FOR THE COURT

STEVEN LUCAS
Clerk of the Court