# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**J.A. FISCHER, A.C. RUGH, T.H. CAMPBELL**
Appellate Military Judges

**UNITED STATES OF AMERICA**

v.

**TRAVIS V. NAUTA**
**SERGEANT (E-5), U.S. MARINE CORPS**

**NMCCA 201500244**
**GENERAL COURT-MARTIAL**

**Sentence Adjudged:** 11 March 2015.
**Military Judge:** Maj M.D. Zimmerman, USMC.
**Convening Authority:** Commanding General, 1st Marine Logistics Group, Camp Pendleton, CA.
**Staff Judge Advocate's Recommendation:** LtCol E.J. Peterson, USMC.
**For Appellant:** LT Rey Austria, JAGC, USN.
**For Appellee:** LT Robert Miller, JAGC, USN; LT James Belforti, JAGC, USN.

**31 March 2016**

---------------------------------------------------
## OPINION OF THE COURT
---------------------------------------------------

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

RUGH, Judge:

A panel of members with enlisted representation, sitting as a general court-martial, found the appellant guilty, contrary to his pleas, of conspiracy to commit obstruction of justice, selling military property, larceny of military property, and obstruction of justice in violation of Articles 81, 108, 121, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 908, 921, and 934, and adjudged a sentence of one years' confinement, reduction to pay grade E-1, a fine of $21,000.00, and a bad-conduct discharge. The convening authority approved the sentence as adjudged.

The appellant raises two assignments of error (AOE): prosecutorial misconduct and unlawful command influence. We disagree with both.

## Background

The appellant was assigned to the Supply Management Unit (SMU) onboard Camp Pendleton, California. The SMU was an intermediate-level unit which supplied repair parts to other units across the West Coast region. As a result, the appellant had access to various military parts and supplies including rifle scopes, switch assemblies, flashlights and flashlight bulbs, which he subsequently purloined and sold online. Afterwards, he conspired with Sergeant (Sgt) McNeill to lie to investigators regarding some of the stolen supplies, namely rifle scopes.

## Prosecutorial Misconduct

The appellant now raises two allegations of prosecutorial misconduct based on a government search of defense counsel spaces onboard Camp Pendleton and on the actions of two government counsel, Captain (Capt) W and Capt McC, who were disqualified from serving as trial counsel after becoming witnesses to the conspiracy and obstruction charges.

1. Government Search of Defense Counsel Spaces

At trial the appellant was represented by an individual military counsel and a detailed defense counsel, Capt F. Nearly a year before trial in May 2014, Capt F was co-counsel for a separate servicemember accused of battery, kidnapping, fraud, and drug distribution related to a suspected affiliation with an outlaw motorcycle gang. As part of that case, Capt F's co-counsel acquired possession of their client's cellphone, which government investigators believed contained incriminating evidence. After failed negotiations on a voluntary relinquishment of the phone, Marine Corps Criminal Investigative Division (CID) agents executed a command authorized search of the defense spaces, focusing on Capt F and his co-counsel's offices.

The search was video recorded, and Capt F and his co-counsel observed the entire search. The agents examined Capt F's file cabinets, desk drawers, locker and garbage can. The agents did not read the substantive content of any files. When they looked through a file "they would quickly open it, look for the phone and shut it."[1] Eventually, the agents discovered the phone and its case in Capt F's desk drawer. However, as Capt F would not identify the owner of the phone based on ethical considerations, the agents continued searching the office including the file drawer that contained the appellant's case file. None of the files were read by the agents, "but rather quickly perused for any other cellular phones."[2]

After the search, the agents secured the seized phone and the video recording of the search without review. Later, a taint review officer was appointed to screen the video recording, and the seized evidence was forensically evaluated. None of the agents or trial counsel involved in the search of Capt F's office were affiliated or became affiliated with the appellant's case. If any information was revealed from appellant's case file, it was not disclosed to anyone

---

[1] Appellate Exhibit XVII at 14.

[2] *Id.* at 15.

government actor participating in the appellant's case in any capacity.[3] The military judge's review of the video recording of the search did not reveal a disclosure of any privileged information concerning the appellant.

## 2. Disqualified Trial Counsel

Prior to trial the defense requested production of Sgt McNeill, the co-conspirator, as a witness, proffering that Sgt McNeill would testify that he provided rifle scopes to the appellant after receiving them from a civilian named, "Blue." Instead, during a phone interview with Capt W and Capt McC, Sgt McNeill stated he did not know how the appellant acquired the rifle scopes. As a result, Capt W denied the defense's request for production of Sgt McNeill.

In response, the defense filed a motion for production of Sgt McNeill, and an Article 39(a), UCMJ, session was held to litigate the matter. During this hearing, Sgt McNeill changed his account back to the story of "Blue." When Capt W confronted Sgt McNeill about the change in his account, Sgt McNeill testified that the appellant had directed him not to cooperate with the prosecution. Sgt McNeill then admitted to previously lying to Capt W regarding the rifle scopes.

Subsequently, the defense moved to disqualify Capt W and Capt McC from further participation in the case, asserting that Capt W and Capt McC were now witnesses to the conspiracy and obstruction of justice charges and could provide both inculpatory and exculpatory testimony regarding the service discrediting or prejudicial nature of the effort to impede the investigation.

In ruling, the military judge determined that both Capt W and Capt McC were relevant and material witnesses whose credibility could come into question during the course of appellant's trial. Additionally, the military judge emphasized that their participation in trial might be confusing to the members who would have to distinguish first-hand account from argument.[4] The military judge then granted the defense's motion to "disqualify [Capt W] and [Capt McC] as trial counsel."[5] Capt W sought clarification from the military judge, asking via email:

> Are [Capt W and Capt McC] only disqualified from representing the government in front of the bar, or are we also disqualified from any supervisory and/or consultant role with the case? Your ruling was silent on the issue, and the government wishes to ensure that any further participation, either [Capt W or Capt McC] has with this case, is not in violation of your intent[.][6]

The military judge responded:

---

[3] *Id*. at 17.

[4] AE XIII at 10.

[5] *Id*. at 11.

[6] Record at 270.

You are disqualified as serving as trial counsel *on the record*. You are free to share any information you desire with the new trial counsel that will be detailed.[7]

Subsequently, Capt W and Capt McC, along with the newly detailed trial counsel, conducted a follow-up phone interview with Sgt McNeill. During that interview, Capt W notified Sgt McNeill that he had been granted testimonial immunity and further questioned him about his knowledge of the rifle scopes. Again, Sgt McNeill provided him the story of "Blue." In response, Capt W harshly attacked the veracity of Sgt McNeill's account. The next day at Sgt McNeill's request, they spoke again. At that time Sgt McNeill stated that the appellant had directed him not to cooperate with prosecutors, and they had agreed on the alternate "Blue" story.

When asked at trial to explain his change of heart, Sgt McNeill denied feeling pressure from Capt W, testifying:

Me deciding to tell the truth, that was on me, like sitting there and really thinking about and really realizing what I am jeopardizing and what I am doing. That's why I decided to send him an e-mail that night, and then call him the next morning explaining what really happened.[8]

This issue was raised to the follow-on military judge as part of defense's motion for continuance based upon the new testimony. While the military judge clarified that Capt W and Capt McC were to have no more contact with Sgt McNeill, he did not address—and the defense did not raise—the matter as an allegation of prosecutorial misconduct. Likewise, defense raised the search of the defense offices in a motion for appropriate relief for unlawful command influence, but not as a separate matter of prosecutorial misconduct. As a result, both matters have been raised here for the first time as allegations of prosecutorial misconduct.

Discussion

When an appellant fails to object to alleged prosecutorial misconduct at trial, we review for plain error, only granting relief if the appellant carries his burden of demonstrating: (1) there is error; (2) that is clear or obvious; and, (3) that materially prejudiced a substantial right of the accused. *United States v. Fletcher*, 62 M.J. 175, 179 (C.A.A.F. 2005). Prosecutorial misconduct occurs when a prosecutor "'oversteps the bounds of propriety and fairness which should characterize the conduct of such an officer in the prosecution of a criminal offense.'" *Id.* (quoting *Berger v. United States*, 295 U.S. 78, 84 (1935)). "Prosecutorial misconduct can be generally defined as action or inaction by a prosecutor in violation of some legal norm or standard, *e.g.*, a constitutional provision, a statute, a Manual rule, or an applicable professional ethics canon." *United States v. Meek*, 44 M.J. 1, 5 (C.A.A.F. 1996) (citing *Berger*, 295 U.S. at 88) (additional citation omitted).

Assuming without deciding that the strictures of prosecutorial misconduct may extend to other government actors, even those not directly affiliated with a case, the actions of the

---

[7] *Id.* (emphasis added).

[8] Record at 712.

Government in conducting the search of the defense counsel offices did not violate any legal norm or standard *in this case*. There is no indication that the agents involved in the search had specific interest in the appellant's case, recovered information about the appellant's case during the search, or disclosed any information to any other party after the search. Instead, the search was conducted to preserve evidence in a separate, serious investigation. As it relates to this case, the actions of the government were within the bounds of fairness and had no effect on a substantial right of the appellant.

Likewise, the actions of Capt W and Capt McC did not rise to the level of prosecutorial misconduct. The scope of the military judge's disqualification of counsel was ambiguous, particularly after his clarification failed to directly address counsels' questions regarding activities not before the bar. Given the thrust of the military judge's initial ruling—that the disqualification arose largely from concerns about member confusion—trial counsels' interpretation was not so unreasonable as to infringe upon their mandate in a criminal prosecution "not that it shall win a case, but that justice shall be done." *Berger*, 295 U.S. at 88.

Similarly, nothing in the manner in which Capt W specifically questioned Sgt McNeill raises the specter of misconduct. That Sgt McNeill would change his testimony to inculpate the appellant after his grant of immunity may be fertile ground for cross-examination, but it is not shocking to common sense. In light of the facts of this case, such a change in testimony was not the result of prosecutorial misconduct.

For these reasons, we find no error.

### Unlawful Command Influence

The appellant asserts that Capt W's actions in questioning Sgt McNeill constituted actual unlawful command influence. Further, he asserts that Capt W's actions, the search of the defense spaces, and a separate matter involving the senior member collectively constituted apparent unlawful command influence. The facts surrounding Capt W's actions and the search of defense spaces are articulated above. To these, we add to the mosaic a matter involving the senior member.

After findings but prior to sentencing, the court admitted Defense Exhibit C, a series of awards and certificates of appreciation. When Defense Exhibit C was published, the military judge, the parties and the senior member, Lieutenant Colonel (LtCol) N, simultaneously realized that LtCol N awarded the appellant a Letter of Commendation in 2008 while both were serving in Iraq.[9] In a discussion with the military judge, LtCol N recalled acting as commanding officer of the unit for 60 days during that period. He had no independent recollection of the award or of the appellant. He expressed neither positive nor negative opinions as a result of his action on the letter. Neither party had additional questions for LtCol N, and neither party challenged him for cause. He remained on the panel through adjournment.

Discussion

---

[9] Defense Exhibit C at 4.

**"**Congress and this court are concerned not only with eliminating actual unlawful command influence, but also with 'eliminating even the appearance of unlawful command influence at courts-martial.'" *United States v. Lewis*, 63 M.J. 405, 415 (C.A.A.F. 2006) (quoting *United States v. Rosser*, 6 M.J. 267, 271 (C.M.A. 1979)). An accused has the initial burden of raising the issue of unlawful command influence. *United States v. Stombaugh*, 40 M.J. 208, 213 (C.M.A. 1994). The defense must "show facts which, if true, constitute unlawful command influence, and that the alleged unlawful command influence has a logical connection to the court-martial, in terms of its potential to cause unfairness in the proceedings." *United States v. Biagase*, 50 M.J. 143, 150 (C.A.A.F. 1999) (citations omitted). The test for the appearance of UCI is objective. "We focus upon the perception of fairness in the military justice system as viewed through the eyes of a reasonable member of the public." *Lewis*, 63 M.J. at 415. An appearance of UCI arises "where an objective, disinterested observer, fully informed of all the facts and circumstances, would harbor a significant doubt about the fairness of the proceeding." *Id*.

The quantum of evidence necessary to raise the specter of unlawful command influence is "'some evidence.'" *Biagase*, 50 M.J. at 150 (quoting *United States v. Ayala*, 43 M.J. 296, 300 (C.A.A.F. 1995)). The burden of disproving the existence of unlawful command influence or proving that it will not affect the proceeding does not shift until the defense meets its burden of production.

"Where the issue of unlawful command influence is litigated on the record, the military judge's findings of fact are reviewed under a clearly-erroneous standard, but the question of command influence flowing from those facts is a question of law that [the] Court reviews *de novo*." *United States v. Reed*, 65 M.J. 487, 488 (C.A.A.F. 2008) (quoting *United States v. Wallace,* 39 M.J. 284, 286 (C.M.A. 1994)).

At trial the follow-on military judge ruled on whether the actions of Capt W in questioning Sgt McNeill constituted unlawful command influence and found no evidence of either actual or apparent influence. Likewise, the original military judge provided a robust ruling on whether the search of the defense spaces constituted actual or apparent unlawful command influence, in which he stated:

> [T]here has been no evidence presented to the court that any actual [unlawful command influence] occurred in the case of [the appellant]. In addition, regarding apparent [unlawful command influence], in light of the totality of the evidence, there has been no facts upon which a disinterested observer fully informed of all the facts and circumstances would harbor a significant doubt about the fairness of the proceedings in the accused's case.[10]

We concur with both military judges, finding no basis in the record to hold differently in either case. First, the actions of Capt W did not constitute actual unlawful command influence, as he did not act improperly in advising Sgt McNeill of the effect of his grant of immunity or in questioning the veracity of his statement. Second, when considering the actions of Capt W, the search of the defense spaces and the matter of LtCol N, in light of the totality of the evidence, the

---

[10] AE XVII at 29.

appellant has failed to raise some evidence that would cause an objective, disinterested observer, fully informed of all the facts and circumstances, to harbor a significant doubt about the fairness of the proceeding. As a result, he has failed to carry his burden to demonstrate apparent unlawful command influence.

## Conclusion

The findings and the sentence are affirmed.

Senior Judge FISCHER and Judge CAMPBELL concur.

For the Court

R.H. TROIDL
Clerk of Court